STAFFORD *v.* CONSOLIDATED BUS LINES, INC.

(*Nashville,* December Term, 1941.)

Opinion filed June 2, 1942.

A. O. DENNING, of Gallatin, for plaintiff.

W. M. FUQUA, of Nashville, and W. P. PURYEAR, JR., of Gallatin, for defendant.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

This is a suit to recover damages for injuries received by plaintiff when struck by an automobile under the following circumstances:

On May 20, 1939, petitioner was a common carrier of passengers and so authorized under the law of Tennessee, and operated busses on highways in the State and among others between Gallatin and Nashville, and on the particular date, at about nine o'clock in the morning, was operating one of its busses toward Nashville from Gallatin along the Gallatin Pike when it approached the north-

ern edge of a little town known as Hendersonville. At this place, as the bus approached, there were three persons standing on the right of the highway and on the shoulder thereof, namely, a negro woman and her little girl, and the plaintiff, a white child of about ten years of age. The bus did not stop entirely off the highway, the right wheels being on the shoulder of the road and the left wheels on the macadam. The road was 17 feet and 9 inches wide and the bus was 7½ feet wide. The bus stopped with its right wheels about 2 feet on the shoulder and there was left about 12 feet of the macadam part of the highway for other vehicles, besides the shoulder on the other side.

Plaintiff was not a passenger nor a contemplated passenger, but was standing with the two passengers aforesaid when the bus stopped. The bus was stopped and while taking on the passengers the plaintiff walked to the back of the bus and although claimed to have looked for vehicles in both directions before going behind the bus, on reaching the back end of the bus (which was toward Gallatin), she ran from behind the same across the highway and was struck by an automobile going in the opposite direction, said automobile being driven by one Parks Smith, and was injured, suffering a broken leg and other minor injuries for which she sued the petitioner.

The first count of the declaration was grounded upon common-law negligence, and the second, on section 2690 of the Code, which provides as follows:

"(a) No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any road, street, or highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off of the paved or improved or main traveled portion of such road, street or highway; provided, in no

event shall any person park or leave standing any vehicle, whether attended or unattended, upon any road, street or highway unless a clear and unobstructed width of not less than fifteen feet upon the main traveled portion of said road, street or highway opposite such standing vehicle shall be left for free passage of other vehicles thereon, nor unless a clear view of such vehicle shall be obtained from a distance of two hundred (200) feet in each direction upon such road, street or highway.

"(b) Whenever any peace officer shall find a vehicle standing upon a road, street or highway in violation of the provisions of this section, he is hereby authorized to move such vehicle or require the driver or person in charge of such vehicle to move such vehicle to a position permitted under this section.

"(c) The provisions of this section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a road, street or highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such vehicle in such position."

█ Both the trial court and the Court of Appeals held that defendant had violated the statute, and such holding is supported by the decided weight of authority, including our own case of *Ringwald* v. *Beene,* 170 Tenn., 116, 92 S. W. (2d), 411, and *Jaggers* v. *Southeastern Greyhound Lines, Inc.* (D. C.), 34 F. Supp., 667, 668, in a well-reasoned opinion by Judge DARR construing the foregoing statute, from which we quote the following:

"It is my judgment that the legislature of Tennessee had an intention to make stronger the statute by adding the words 'leave standing.' I think this was put in to carry the idea that not only was it prohibited to park a vehicle, which might mean for an appreciable length of

time, but that stopping at all without leaving the required clearance would violate the statute. The word *leave* means 'to put, place, deposit, deliver, or the like.' The word *stand* means 'to cease from movement or progress; to pause; stop; remain stationary or inactive.'

"Applying the meaning of these words, I think that if a vehicle is stopped at a point where the clearance is not left as provided by the statute, even though temporary, the statute is violated.

"Under this construction it would not mean that in all conditions a person would not be excused from violating the letter of the statute. The violation of this statute would be excused for the same reasons as the violation of other statutes are excused—such as, an emergency, the working of undue hardship, the protection of life or limb, and the like.

"It would be against the public weal to decide that passenger busses could stop on highways, not giving the clearance required by this statute, to take on and put off passengers, and not be held to violate the law. This statement is made with due regard to the convenience and comfort of the public who travel by bus and having in mind the common law duties that would be required by bus operators.

"Such stops are not temporary stops for necessary purposes. There is no reason why persons operating passenger buses can not have regular bus stops in the rural communities arranged for the convenience and comfort of their passengers and prospective passengers, at places where the highway would be left clear. This would be a contribution to insure the safety of the traveling public."

Upon appeal, this construction of the statute by Judge DARR was concurred in by the Circuit Court of Appeals.

*Jaggers* v. *Southeastern Greyhound Lines,* 6 Cir., 126 F. (2d), 762.

Counsel contends that a distinction should be made between a bus being operated as a common carrier of passengers and a privately operated automobile. The statute makes no such distinction, and the authorities generally do not do so.

The Legislature evidently intended making no such difference at the time of the passage of the original Act, for the reason that at its 1941 session, by Chapter 116, it amended the Act so as to provide that it should not apply to such bus companies while taking on or discharging passengers if a clear view of such vehicle could be had from a distance of 200 feet in each direction.

The trial court, however, directed a verdict in favor of defendant upon the ground that the accident was proximately caused by the independent act of the plaintiff in running out from back behind the bus into the highway in front of the approaching automobile, and that such act on her part was an independent and intervening cause from any act of negligence imputed to defendant, her injury being one which defendant could not reasonably foresee or anticipate.

Upon this latter proposition the Court of Appeals reversed the trial court and remanded the case for a new trial, holding that to be a question for determination by the jury.

We think the Court of Appeals was in error. The facts are few, simple and uncontroverted, and present a situation as to which reasonable minds could not differ.

In *Nashville, C. & St. L. Ry.* v. *Harrell,* 21 Tenn. App., 353, 363, 110 S. W. (2d), 1032, 1038 (petition for writ of *certiorari* denied by this court), it was said:

"And the intervening act of a child may be the responsible cause of his own injuries, although the child could not be held guilty of contributory negligence. 22 R. C. L., pp. 140, 141, sec. 25; note, 23 L. R. A. (N. S.), p. 251.

"It was also held in *Chattanooga, etc., Co.* v. *Hodges, supra* [109 Tenn., 331, 70 S. W., 616, 60 L. R. A., 459, 97 Am. St. Rep., 844], that, although ordinarily a question for the jury, 'where the facts are fairly incontrovertible the question of proximate or intervening cause is for the court'; and it was so held in the later case of *Moody* v. *Gulf Refining Co.*, 142 Tenn., 280, 290, 293, 294, 218 S. W., 817, 8 A. L. R., 1243."

In that case a nine-year-old child was traveling by train from school to his home at Coldwell, having paid his fare. Upon the failure of the train to stop at Coldwell, the plaintiff jumped from the rear platform of the passenger car and was injured. From the opinion in that case, delivered by Judge FAW, we quote the following:

"The undisputed evidence in the instant case seems to us to compel the conclusion that there was nothing in the conduct, character, or condition of F. J. Harrell, Jr., at any time prior to the moment that he jumped from the train, to suggest that he would commit so rash an act. 'The chance that such a thing would happen was so remote as not to come within the scope of reasonable apprehension.' *Fischer Lime & Cement Co.* v. *Sorce*, 4 Tenn. App., 159, at page 164.

"The testimony, not only of Woodruff, the conductor, but of the plaintiff himself and of his teacher, his parents, and in fact all of the witnesses in the case, whether introduced by the plaintiffs or the defendant, tends to this conclusion. The proof with respect to the intelligence, capacity, and experience of the plaintiff leaves no doubt

that he was conscious that it was dangerous to jump off the train while it was moving rapidly. See *Southern Railway Co.* v. *Whaley,* 170 Tenn., 668, 676, 677, 98 S. W. (2d), 1061.

"We do not regard the case of *Marion County* v. *Cantrell,* 166 Tenn., 358, 61 S. W. (2d), 477, 478 (upon which counsel for plaintiffs seems to rely with much confidence), as opposed to the conclusions we have reached in the instant case. In the *Cantrell Case,* the plaintiff's child fell or jumped through an 'emergency door' in the rear of a school bus, which door had been negligently left open by the driver of the bus. On the facts of that case, the Supreme Court held: 'That one so operating such vehicle might reasonably have foreseen that some child would fall or jump out this door and get hurt; that such an accident was a natural, probable, and proximate consequence of such negligence.'

"We are of the opinion that defendant's motion for a directed verdict should have been sustained by the trial court, and that there is no evidence to support the verdict."

In *Moody* v. *Gulf Refining Co.,* 142 Tenn., 280, 218 S. W., 817, 820, 8 A. L. R., 1243, defendant's servants had spilled gasoline on the ground which was ignited with matches by several small boys causing a fire that destroyed the property of plaintiffs. In the opinion the court points out that under the general rule the proximate cause of the injury is a question for the jury, but that where the facts are undisputed and are susceptible of but one inference, the question is one of law for the court. After reviewing the authorities, in affirming the judgment of the trial court in directing a verdict for defendant, the court said:

"But, even if it be conceded that the defendant was guilty of negligence in the manner in which it kept its premises and the manner in which it was unloading the gasoline in question, still we are of the opinion that such negligence was not the direct and proximate cause of the fire which destroyed the property of plaintiffs, but that said fire was the direct and proximate result of the indepenent intervening act of the boys in throwing lighted matches into the gasoline during the absence of defendant's employé, and that this act on the part of said boys was not such as could have been reasonably anticipated by defendant's employé."

Upon the principle announced in these cases we think the trial court was correct in directing a verdict for the defendant.

*Certiorari* has heretofore been granted and argument waived.

For the reasons set forth herein, the judgment of the Court of Appeals will be reversed and that of the trial court affirmed.