FUSON v. CANTRELL.—166 S. W. (2d) 405.

Middle Section. August 15, 1942.

Petition for Certiorari denied by Supreme Court, December 5, 1942.

Trabue, Hume, Howard, Davis & Gale, of Nashville, and McAllen Foutch, of Smithville, for plaintiff in error.

George S. Buckner, of Murfreesboro, for defendant in error.

FELTS, J.   James N. Cantrell brought this action against Luther Fuson to recover for personal injuries suffered in a collision of a

motorcycle and an automobile near the intersection of West Main Street and Short Mountain Street in Smithville, Tennessee.

Cantrell was riding on the rear part of the seat of the motorcycle which was being driven by Norville Spencer east on West Main Street toward this intersection; and Fuson was driving his automobile west on West Main Street approaching the intersection, intending to turn to his left or south into Short Mountain Street. The gist of the negligence charged was that Fuson turned his automobile to his left across the center of West Main Street in front of the motorcycle. This charge was put into five counts in the declaration. The first count alleged that Fuson "negligently and unlawfully steered or turned his automobile to the left across the center of West Main Street at said intersection" immediately in front of the motorcycle, thereby causing the collision. The second count averred that Fuson failed to turn to his right and to give the motorcycle one-half the road, in violation of Code, sec. 2671. The third count was that Fuson, upon nearing or reaching the intersection, stopped his automobile in the street, without turning so far to his right as to leave one-half the road free, open and unobstructed, in violation of Code, sec. 2674. The fourth count alleged that Fuson drove his automobile on said highway and intersection recklessly, in violation of Code, sec. 2681. And the fifth count charged that Fuson was guilty of reckless driving in that he drove his automobile to the left of the center of West Main Street, in violation of Code, sec. 2682 (c), Second (1941 Supp. to Williams Code). Fuson pleaded the general issue.

Cantrell recovered a verdict and judgment for $3,000. Fuson appealed in error, and insists that a verdict should have been directed for him because there was no evidence of any negligence on his part and because Cantrell was guilty of contributory negligence which barred his right to recover.

Cantrell has moved for an affirmance upon two grounds: (1) Fuson made no motion for a new trial, but moved the court to set aside the verdict and to direct a verdict for him. (2) This motion was not copied on the minutes and not included in the bill of exceptions.

█ █ The first ground of the motion is not good. Fuson did not desire a new or another trial of the issues. He sought a directed verdict in the trial already had. At the close of all the evidence he had moved for a directed verdict, and the trial court had overruled his motion. It was the asserted error in this action which he sought to have the court correct by setting aside the verdict and directing a verdict for him; and it was the court's duty to do this if the court had erred in not directing a verdict in the first instance. Barnes v. Noel, 131 Tenn., 126, 174 S. W., 276; F. W. Woolworth Co. v. Connors, 142 Tenn., 678, 222 S. W., 1053, 9 A. L. R., 431. Fuson's motion to set aside the verdict and to direct a verdict for him, upon the grounds which had been set forth in his original motion for a directed verdict,

was the equivalent of a motion for a new trial, and was a proper method of saving for appellate review the question of his right to a directed verdict. Life & Casualty Ins. Co. v. Bradley (Tenn. Sup.), 160 S. W. (2d) 410.

We also think the second ground of the motion to affirm is not good. A motion for a new trial may be made part of the record for appellate review either by being spread upon the minutes or by being included as a part of the bill of exceptions. Where it is made part of the bill of exceptions, such a motion need not be spread upon the minutes. Moore v. Chadwick, 170 Tenn., 223, 94 S. W. (2d), 49. We think the transcript before us shows that Fuson's motion to set aside the verdict and to direct a verdict for him was properly made a part of the bill of exceptions. It is true this motion was not put in that part of the bill of exceptions which contains the evidence; but it immediately followed that part. That part of the bill of exceptions begins on page 29 of the transcript and ends on page 350, with the authentication and signature of the trial judge. On page 351 appears the motion to set aside the verdict. Immediately following this motion on page 352 appears the following:
"James N. Cantrell vs. Luther Fuson
In the Circuit Court of DeKalb County, Tenn.

"The foregoing is a true and correct copy of the motion to set aside verdict and direct a verdict for the defendant filed by defendant, Luther Fuson in this case and is identified, authenticated and signed by the Court and ordered made a part of the bill of exceptions in this cause.

"This 26th day of Sept., 1941.
Allison B. Humphreys, Jr.<br>Trial Judge"

On pages 353 to 359, inclusive, appear the minute entries, the appeal bond, and the bill of cost. On the next and last page of the transcript appears the clerk's certificate, which is in proper form.

We think the order of the trial judge, above quoted, authenticating this motion and ordering it to be made part of the bill of exceptions had the effect of making it part of the bill of exceptions. It is not necessary that a bill of exceptions be contained in one document. Parts of it may be in the form of exhibits or in more than one document, provided each of such parts is properly authenticated by the signature of the trial judge and ordered to be made part of the bill of exceptions. Cosmopolitan Life Ins. Co. v. Woodward, 7 Tenn. App., 394, 401, 402, and cases there cited. So the motion to affirm is overruled.

The evidence, taken most strongly to support the verdict, tended to prove these facts.

The Nashville-Smithville Highway enters Smithville on West Main Street. This street runs east and west and is paved with asphalt.

Short Mountain Road, called Short Mountain Street after it enters Smithville, runs north and south, and is paved south of its intersection with West Main Street and graveled north of this intersection. Cantrell and Norville Spencer on one motorcycle and James Calhoun and Hobart Hullet on another motorcycle had driven from Smithville five or six miles out the Smithville-Nashville Highway to a place called Snow Hill Inn. They had there had one bottle of beer each and were riding back into Smithville on the motorcycles. About a quarter of a mile before reaching the scene of the accident and shortly after entering the corporate limits of Smithville the motorcycle ridden by Calhoun and Hullet speeded up and passed the motorcycle on which Cantrell and Spencer were riding, and came on into Smithville and across the intersection before Cantrell and Spencer reached the intersection. Just before reaching the intersection, about 300 feet west of it, there was a crest of a hill, and West Main Street, going east toward the intersection, was downgrade. It was about 4:30 or 5 p. m., Saturday, October 19, 1940. It was still daylight and the street was dry. Fuson, an employee of the Consolidated Bus Lines, had finished his day's work and had started to his home, which was located some two miles out Short Mountain Road. Accompanied by his wife, he drove west on West Main Street toward the intersection, intending to turn to his left or south on Short Mountain Street.

Fuson said that when he reached the intersection and was in the act of turning to his left into Short Mountain Street, he saw the first motorcycle coming fast toward the intersection, and he immediately stopped his car, and this motorcycle passed to his left; and that while thus stopped, he saw the second motorcycle coming fast toward the intersection, and he undertook to put his car in reverse and back it so as to give this motorcycle more room, but before he could do this the motorcycle struck the front of his car about the center. His wife testified to the same effect. But witnesses for Cantrell, including Calhoun and Hullet, said the first motorcycle passed Fuson's car before the car reached the intersection and some 50 or 60 yards east of the intersection. All the witnesses, however, agreed that Fuson's car was stopped, standing still, at the time it was struck by the second motorcycle, the one on which Cantrell and Spencer were riding. Cantrell and Spencer testified that as they came over the crest of the hill they saw Fuson's car approaching the intersection: that when they were about halfway between the crest of the hill and the intersection they saw the car start "pulling out in the intersection;" that when they were pretty close to the intersection the car turned to its left, stopped and blocked the street; and that they had neither room to pass nor time to stop to avoid the collision. They estimated that the motorcycle was going about 25 or 30 miles per hour. The maximum speed limit under an ordinance of Smithville was 30 miles per hour.

There was, however, little or no dispute as to the position of Fuson's car at the time it was struck by the motorcycle. Some of the witnesses said the motorcycle appeared to have knocked the car back a couple of feet. It was turned so as to make its left front wheel about 16 inches further south than its left rear wheel. But the point where the left front wheel was immediately after the accident was fixed by the evidence with little or no conflict. Cantrell's witness Herndon was in his office on the southwest corner of the intersection. He heard the motorcycle skidding, saw it pass his window, and heard the collision. He went at once to the scene, saw the position of the motorcycle, the boys lying in the street, and the position of Fuson's car. Later, in the presence of other witnesses and counsel for Cantrell, Herndon drove a nail into the asphalt to mark the point where the left front wheel of Fuson's car was just after the accident. Accepting this point without question, each side produced a map of the intersection, showing this point and measurements of the widths of both the intersecting streets. Both these maps were made part of the record and sent up. According to the map for Cantrell, the nail in the pavement, marking the point where the left front wheel of Fuson's car was just after the accident, was about 8 feet east of the east margin of the intersection and 3 feet south (or to Fuson's left) of the center of the main traveled portion of West Main Street, leaving some 5 feet of the main traveled portion of the street to the left or south of Fuson's car.

It appears, however, without dispute that there was an offset of 17 or 18 feet on the south side of West Main Street, making the street 17 or 18 feet wider at the east margin of the intersection than it was at the west margin of the intersection. The north margin of West Main Street continued in practically a straight line from the east across to the west side of the intersection, but the south margin had the offset at the east margin of the intersection which made the street some 17 or 18 feet wider there than at the west margin of the intersection. This offset was caused by widening West Main Street on its south side from the east edge of Short Mountain Street east toward the main part of town. On the southeast corner of the intersection, where this offset began, was located the Church of Christ. In front of this church was a concrete sidewalk some 13 feet wide. From the north margin of this sidewalk West Main Street was paved with asphalt or oil and gravel, making the paved portion of the street about 35 feet wide east of the intersection, while it was only about 16 feet wide west of the intersection. It seems that the main traveled portion of West Main Street was of about the same width on both the west and the east side of the intersection, or about 16 feet in width.

There was no marked center line in West Main Street. The case for Cantrell rests upon the theory that the center of the street is to be determined by considering only the main traveled portion of

it and by excluding the paved portion south of the main traveled portion. Upon this theory Fuson had pulled the front of his car some 3 feet to his left or south of the center. But we think the whole paved area of the street at the point where Fuson was turning must be considered in determining the center of the street and in determining whether he had pulled his car to his left of the center and was guilty of the negligence charged. If the center of the street be determined by considering the whole paved area, as we think it must, Fuson's car was several feet to his right of the center at the time it stopped and when it was struck by the motorcycle. The whole paved area to the south of Fuson's car was unobstructed and was safe for travel. There were some 22 or 23 feet of this area, through which the motorcycle could have passed in safety. It is true that Cantrell and several of his witnesses said the street was blocked by the car and that there was not room to pass to the right or south of the car. But a reading of their testimony, in the light of the undisputed physical condition of the street, shows that they were considering only the main traveled portion of the street and excluding the 17 or 18 feet of the paved portion of the street south of the main traveled portion. This is shown not only by both of the maps but also by two photographs sent up by the record.

■ Upon these undisputed facts we are constrained to hold that Fuson had not pulled to his left across the center, but was on his right side of the center of the street, when he stopped his automobile and when it was struck by the motorcycle, and that he breached no duty to Cantrell, was guilty of no negligence, but had left more than half the street open and unobstructed in front of the motorcycle; and that a verdict should have been directed for Fuson upon the ground that he was guilty of no negligence.

For these reasons the judgment of the circuit court is reversed, the verdict is set aside, and the suit is dismissed. The costs of the cause, including the costs of the appeal in error, are adjudged against James N. Cantrell, plaintiff below and defendant in error here.

Howell, J., concurs.