COLEMAN et al. v. BYRNES et al.—242 S. W. (2d) 85.

Western Section. September 27, 1950.

Petition for Certiorari denied by Supreme Court, Dec. 9, 1950.

682

Canada, Russell & Turner and Tom Price, all of Memphis, for plaintiffs in error.

McDonald, McDonald & Kuhn and Robinson & Robinson, all of Memphis, for defendants in error.

ANDERSON, P. J. This is an automobile-bicycle collision case.

Young Mark Coleman age 11½ suffered severe injuries when his bicycle collided with the half ton pickup truck of Byrnes Plumbing Company being driven by an employee Lemons on his employer's business.

Separate suits by the minor for his injuries and by his father for expenses were consolidated for trial, and tried together before the court and to a jury which rendered verdicts of $9,000 and $3500 respectively. On defendant's written motion for a new trial the verdicts were set aside and verdicts in favor of defendants directed. Plaintiffs appealed in error.

The undisputed facts were that young Coleman and another boy were riding their bicycles south along North Belvedere Street, Memphis, in the early afternoon of December 26, 1947. This street runs north and south and between the cross streets of Poplar to the north and Madison to the south of the scene of the accident is a long block of over twelve hundred feet with no intersections. The street is 40 feet wide between curbs, has gutters and sidewalks and is surfaced with macadam; no line marks the center of the street.

At a point about 600 feet south of Poplar a large city garbage truck, 40 feet long and 8 feet wide, headed south was parked several feet out from the west curb. As the boys attempted to pass to the left of the garbage truck, Coleman was in the lead and just as he came around the left rear of it the defendants' truck coming from the opposite direction was about even with the front of the garbage truck. Upon seeing the boys the defendants' driver pulled to his right and applied his brakes causing the rear of the truck to skid to the left and collide with Coleman and his bicycle.

The City was sued but was let out on demurrer under the rule of governmental function and no complaint is made of that action.

The declaration as to Byrnes and Lemons charged negligence at common law consisting of a failure to exercise due care for the safety of others, who Lemons saw, or should have seen, were using the street in a lawful manner; excessive speed under the circumstances; failure to reduce speed and pull to the right so as to permit Coleman to pass safely; sudden application of brakes causing the rear of the truck to skid to the left against Coleman.

The second count charged violation of certain city ordinances—the 30 mile speed limit and requirement that vehicles keep as near to the right hand curb as practicable, except when overtaking and passing.

Defendants plead the general issue, contributory negligence and specially that the proximate cause was the act of plaintiff in suddenly and without warning swerving out from behind the garbage truck and running into the left rear of defendant's truck when there was ample room for the bicycle to have passed between the two trucks, causing defendants' driver to swerve his truck to the

right and try to meet the emergency created by plaintiff.

The determinative question is whether there was any material evidence of a substantial nature to show that the defendants' servant was guilty of negligence which contributed as a proximate cause to the minor's injuries. In determining this question we must take as true all evidence and reasonable inferences therefrom favorable to the plaintiffs, and discard all countervailing evidence and inferences therefrom.

So considered, there is evidence to show the following in favor of plaintiffs. Young Coleman and his companion had been visiting at a residence near the north end of this long block on Belvedere just south of Poplar Street. They were headed south riding slowly along in the normal driving lane on the west side, their right hand side of the street. There were automobiles parked at irregular intervals along both sides of the street. As they approached the garbage truck they intended to pass to the right of that vehicle which was headed south and parked out from the curb a few feet. But before they reached it the cab door on the right hand side was opened and a man started to get out, thus blocking the way for the bicycles. The boys were riding tandem with Coleman's bicycle leading. He pulled to the left to go around and pass along the left side of the garbage truck and as he passed the left rear or northeast corner of it and about 3 feet from it, defendants' truck coming from the opposite direction on the east side of the street with the east side of the truck about 12 feet from the east curb had reached a point about even with the front of the garbage truck. Defendants' driver was traveling about 25 m. p. h. When he saw the boys he pulled to the right and slammed on his brakes, causing the rear of the truck to skid to the left and collide with Coleman and

his bicycle, knocking Coleman up in the air about six feet and towards the north. He came down slightly west of the center line of the street and his bicycle against the garbage truck.

The small truck stopped about 8 feet north of the north end of the garbage truck crosswise the street with front wheels against the east curb. The day was clear and dry and the view up and down the long block was unobstructed except for the garbage truck and a slight rise in the street somewhat nearer the north end of the block. There were no cars parked along the east curb for about 100 feet at the place of accident.

Each half of the street to the imaginary center line was, of course, 20 feet. There was evidence that the garbage truck was about 4 feet out from the west curb; this plus the stipulated width of 8 feet for the big truck plus 3 feet that plaintiff said he was to the east of the large truck gives a total of 15 feet, leaving 5 feet to spare for variation in estimates before you reach the center line from the west curb.

The defendants' employee was driving with the west or left side of his truck 18 feet from the east curb, which would make his right side about 12 feet from the same curb, so that there were left 2 feet between the small truck and the center of the street and a total between the smaller vehicle and the bicycles of 7 feet less allowance for estimates.

The defendant's servant testified that the collision occurred ''around 3 or 4 feet'' east of the imaginary center line. But it is clear that he did not see the actual impact, nor did anyone else. However, a dent in the left rear fender just aft the top of it indicates that that part of the truck struck the bicycle, as a result no doubt of the driver putting on the brakes and swerving the car

to the east, causing the rear end to swing around in the direction from which the bicycle was coming. Young Coleman was rendered unconscious. He was unable to recall anything about the accident after he abandoned the idea of passing the garbage truck on his right and started to go around to the left, except as he expresses it, "I did not even touch the truck."

The plaintiff's companion, twelve years of age, was following young Coleman as he started around the garbage truck to the left. He says that he did not see the small truck before it hit Coleman; that he had not gotten past the garbage truck at the time.

The garbage truck, as said, was shown to be 40 feet long and 8 feet wide. There was no testimony with respect to its height and general appearance, but photographs of it were put in the evidence. These show the body to have been a very large boxcar-like affair, the top of which was at least 10 feet from the ground, with an over-all length of about 25 or 30 feet.

The evidence is not clear as to whether the boy had actually crossed the imaginary center line of the street before he was struck. But the circumstances leave no doubt that if he had not, he was so close to the center that the difference cannot be regarded as determinative of any issue in this case.

What an ordinarily prudent person would have done under the same or similar circumstances is the standard by which the conduct of the defendants' servant must be tested. When the measurements and calculation thereon are considered in the abstract, they appear much more formidable from the defendant's standpoint than they do when applied to the actual situation viewed in the light of everyday experience in the driving of motor vehicles. It is true that when the matter is viewed with

hindsight, it turned out according to the subsequently made measurements that there was room for the driver of the small truck to have passed the bicycle without having put on his brakes or swerved his vehicle to the right; but even so, it would have been a rather close shave, for there would have been a lane between the small truck and the garbage truck only seven feet wide into which the bicycle would have turned. But when the defendant driver's vehicle was about even with the cab of the garbage truck, the boy on the bicycle suddenly appeared from the rear of the truck, headed, at an angle, it may be, toward the center of the street. Had he continued at that angle, he would have crossed the path of the truck; if he had made a sharp turn to the right he would not have done so. Confronted with this situation, the driver could not know and had no time to determine what the boy would do. Nor did he have any time to make any measurements to calculate the distances. He was thus confronted with an emergency and in concluding to put down his brake and swerve his vehicle rather than to go straight ahead, the conclusion is inescapable that he was acting according to his best judgment.

The rule applicable to this situation as adopted by our Supreme Court from Ruling Case Law, is stated as follows: ''One who in a sudden emergency acts according to his best judgment, or who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence.'' Moody v. Gulf Refining Co., 142 Tenn. 280, 293, 218 S. W. 817, 820, 8 A. L. R. 1243.

It has been well said that the ''Law does not require perfect faculties or perfect use of existent faculties, but only 'ordinary care,' which presupposes a margin of error and is erected upon the supposed doings of

average man likely situated, making allowance for mistakes in judgment". Kansas City M. & O. Ry. Co. of Texas v. Perry, Tex. Com. App., 6 S. W. (2d) 111, 112. No more is required than such care as an ordinarily prudent person would exercise under the same or similar circumstances. In negligence cases what an ordinarily prudent person would do in the particular circumstances is not the subject of proof, but a matter for which the triers of fact, whether the jury or the court, must draw upon their observation and experience with respect to what is customarily regarded in the community as a prerequisite for the protection of others. "Ordinary care" in the abstract means such care as is commonly exercised by the majority of the persons of ordinarily prudent habits in the community when placed in similar circumstances. Vol. 30, Words and Phrases, pp. 194, 195.

When these principles are applied to the facts favorable to the plaintiffs in the present case, the inquiry is narrowed to the simple question of whether, according to observation and experience, the great mass of prudent persons in the community would have put on the brakes and pulled the truck to the right when the boy on the bicycle suddenly appeared from behind the garbage truck. As already indicated, common experience requires that this question be answered in the affirmative.

But as we read plaintiffs' briefs, there is no contention that the sudden appearance of the boy from the rear of the truck did not constitute an emergency within the meaning of the rule. The insistence is that "the complete answer (to the defense of sudden emergency) is that it was for the jury to say whether Lemons' (the driver of the small truck) negligent acts contributed to the sudden emergency." The argument is as follows:

"These acts include the speed at which he was driving, the diligence of the lookout which he was keeping, and the location of his truck in the street. By his own testimony he was driving closer to the garbage truck than he was to any car which was parked on the east side of Belvedere. The jury could have well concluded that had he been closer to the east side no emergency would have been created and he would not have struck the boy."

With reference to the speed, the limit in the particular area as fixed by city ordinance is 30 miles per hour. The only evidence in the record bearing on the rate of speed of the small truck as it approached the garbage truck is the testimony of the unimpeached driver to the effect that he was driving not more than 25 miles an hour.

■■ It is true that if a motorist is driving at a rate at which a reasonably prudent man would not drive under the same or similar circumstances, he is not exercising ordinary care, and is guilty of negligence, even though he be not violating the particular ordinance of the municipality. But we do not think a jury would be warranted in finding in this case that ordinary care required a slower rate of speed under the particular circumstances, especially in view of the fact that under the undisputed evidence the driver of the truck did not know or have reason to know that the bicycles or any other vehicle were approaching from the opposite direction. The scene of the accident was in a residence section. So far as the driver knew or had reason to know, the west side of the street was unoccupied, except for the garbage truck. The physical and other circumstances in Herstein v. Kemker, 19 Tenn. App. 681, 94 S. W. (2d) 76, are very different from those of the present case. In that case the defendant was driving his automobile at night in the vicinity of a heavily patronized picture show, from which patrons

were emerging, and an area in which the traffic, automobile as well as pedestrian, was dense. No such situation is present in this case.

■■ We are further of the opinion that the evidence presented no reasonable basis for holding that the driver of the truck failed .to keep a proper lookout ahead. In arguing for the contrary view, the plaintiffs-in-error insist that had he maintained a proper lookout he would have seen the boys approaching the rear of the truck. Here again the requirement was that of ordinary care, that is, the driver was required to keep only such a lookout as the ordinarily prudent person would have kept under the same or similar circumstances. In traveling upon a city street, such a person does not keep his attention centered on one side of the street or on one particular area. In the present case, the driver was bound to keep a lookout on his right because of the possibility that one of the cars parked on the east side of the street might pull out or some occupant might get out on his side. The fact that he did not see the boys as they proceeded before they reached the vicinity of the truck and before they disappeared behind the rear end, is no basis for concluding that a proper lookout was not kept. The contention of the plaintiffs-in-error fails to take into consideration the size of the garbage truck. The only conclusion possible is that as the boys approached on the bicycles near the west edge of the street, the vision of the truck driver was obscured by that vehicle. The fact that a pedestrian on the east sidewalk saw the boys before they disappeared behind the truck does not require a contrary conclusion. His line of vision was from a different angle.

Moreover, if the truck driver had seen the boys before they disappeared behind the rear of the truck, it would

have made no difference, because the manner in which they were traveling including their nearness to the west side of the street, indicated that they intended to pass on the west side of the garbage truck, as indeed they both testified they did intend to do. They did not change their minds until they were so near the rear of the garbage truck that it was a physical impossibility for the defendant driver to see them.

But the principal contention upon this phase of the case is that the defendant was guilty of negligence in violating the city ordinance, requiring one to keep his vehicle as near the right hand curb as practicable, and that had the defendant obeyed this ordinance, he would have been confronted with no emergency. We have given this contention our best consideration and conclude that there was no violation of the ordinance. While there is evidence that no cars were parked in the immediate vicinity for about 100 feet, still the ordinance must be given a reasonable construction consistent with the realities of life. The undisputed proof is that defendants' truck was barely a car's width or about six feet from the curb and that cars were parked along at intervals beginning at either end of this open space. The law does not require one to weave in and out of gaps or unoccupied spaces between cars parked at the curb. People simply do not drive in such manner and to do so would not only slow down traffic unnecessarily but would be useless and actually a hundred times more fraught with danger to every other person and vehicle using the street. As a matter of everyday experience and observation most drivers keep a reasonable distance away from the outside or left side of parked cars, because of the dangerous and abominable habit of people in entering and leaving cars on the street side and of pulling suddenly out from the

curb without warning and in disregard of cars already moving along the same side of the street.

The ordinance simply requires that cars be kept as far to the right, or as "conveniently near the curb on the right side", as practicable. Gouldener v. Brittain, 173 Tenn. 32, 37, 114 S. W. (2d) 783, 784.

We think as a matter of law the defendant was not violating this ordinance, even if the left side of his truck was within two feet of the center of the street.

As already said the evidence in Herstein v. Kemker, 19 Tenn. App. 681, 94 S. W. (2d) 76, and the cases cited therein was entirely different from this case and did present a question for the jury on this point.

But apart from the foregoing, the plaintiffs-in-error are confronted with the issue with respect to the proximate cause of the injuries complained of.

The Supreme Court has said: "What is meant by 'proximate cause' is not necessarily that which is next or last in time or place, but that which is a procuring, efficient, and predominant cause. Closeness in causal relation, rather, is the meaning". Citing Authorities. Grigsby & Co. v. Bratton, 128 Tenn. 597, 603, 163 S. W. 804, 806.

In applying this principle, it is important to bear in mind that the intervening act of a minor may be the responsible cause of his own injury although he could not be held guilty of contributory negligence. Nashville, C. & St. L. Ry. v. Harrel, 21 Tenn. App. 353, 363, 110 S. W. (2d) 1032; Stafford v. Consolidated Bus Line, Inc., 179 Tenn. 185, 164 S. W. (2d) 15; 38 Am. Jur. 732, Sec. 74.

Thus it is said that the question of whether, in view of his youth, the conduct of a boy of twelve constituted contributory negligence is not a relevant factor where the dominant point is whether his conduct amounted to an

intervening cause which negatived the character of negligence of the defendant as the proximate cause of the injury. Miss. City Lines v. Bulloch, 194 Miss. 630, 13 So. (2d) 34, 145 A. L. R. 1199.

We are unable to escape the conclusion that in the present case the proximate cause of the minor plaintiff's injuries was his act in appearing suddenly and without warning from the rear of the garbage truck headed toward the path of the approaching vehicle. It was this which brought about the conduct on the part of the driver of the truck which forms the basis of this action. As already pointed out, if the bicycle had continued in the direction in which it was headed when it first appeared to the defendant driver, it is obvious that it would have crossed the path of the truck. To charge the driver with foreseeing that the boy would turn or would be able to turn sharply to the right into the seven-foot space between the garbage truck and the approaching vehicle would be to require of him a prevision which an ordinarily prudent person does not possess.

There are several cases which by analogy furnish support for the conclusion reached on this phase of the case. Among these are, Stafford v. Consolidated Bus Lines, Inc., supra; and Harbor v. Wallace, 31 Tenn. App. 1, 211 S. W. (2d) 172.

In the first case a ten-year-old girl was struck by an automobile when she ran across the highway from behind a bus stopped on the thoroughfare to take on passengers. Suit was brought against the bus company, charging it with negligence in violating the statute contained in Code Section 2690, in that the vehicle had been stopped on the highway in such a manner as to not leave the clearance provided by the statute. It was held as a matter of law that the child's conduct in running from be-

hind the bus was the proximate cause of her injuries, independent of the conceded negligence on the part of the defendant in violating the statute. The basis for the holding was that under the undisputed evidence the driver of the bus could not reasonably have foreseen or anticipated such an act on the part of the child.

In the other case this Court, in an opinion by Judge Baptist, applied the same principle to a somewhat different state of facts. There, a seventeen-year-old girl, alighting from a bus, went around it and started across the highway. She ran into the side of the defendant's automobile which was approaching on the other side of the highway. Upon the trial, she contended that it was the duty of the judge to submit the case to the jury on the question of the defendant's failure to have her car under proper control, and her failure to sound her horn to give notice of her approach. This contention was overruled, and it was held that reasonable minds could not differ about the proposition that the plaintiff's injuries were caused by her independent, intervening act in running from behind the bus into the highway,—an act which the defendant motorist had no reason to foresee.

That case is stronger upon its facts in favor of the plaintiff than the present one. It and the case of Stafford v. Consolidated Bus Lines, and others of like tenor, all turned upon the question of whether the defendant had reason to foresee the intervening act relied upon. It seems to us certain that a motorist approaching a passenger bus discharging passengers has much more reason to foresee that a passenger might start across the road from behind the bus than the driver in this case had to foresee that the minor plaintiff, of whose presence he was unaware, would suddenly emerge from the rear of the vehicle as if to cross the center of the street. In other

words, a standing passenger bus discharging passengers is at least notice of the presence of passengers in the immediate vicinity, whereas this certainly cannot be said to be true of the parked garbage truck.

This was a most regrettable accident, but upon the whole case we are compelled to the conclusion that the verdict for the defendant was properly directed. In the view we have taken of the case it is not necessary to pass upon the defense of contributory negligence on the part of the minor plaintiff. The result is that the judgment is affirmed at the cost of the plaintiffs-in-error.

Baptist, J., concurs.

Swepston, J., dissents.

Swepston, J. (dissenting).

I respectfully dissent from the majority in this cause.

It seems to me the jury should have been allowed to decide whether a sudden emergency arose. If it did not, there was evidence of negligence. It is clear enough that the truck driver could not reasonably have been expected to see the boys before the plaintiff emerged from behind the huge garbage truck. But the proof is not clear that he suddenly came out immediately behind the garbage truck and headed athwart the path of the defendant's truck. The truck driver so testified, and neither the plaintiff nor any of his witnesses stated specifically how far back of the garbage truck plaintiff was when he emerged or came into the view of the truck driver. No witness stated how far back the boys were when they turned to the left, nor whether it was a sharp or a gradual turn, but there is testimony that before they reached the garbage truck they were proceeding in a leisurely and prudent manner near the right hand curb; the fact that they observed the

open door on the garbage truck which caused them to turn to the left indicates they were keeping a lookout ahead, and the inference is justified that they were not too close to the rear of the garbage truck, because they did not stop but kept moving and changed directions perhaps at an obtuse, gradual angle and so came into view of the driver at such an angle instead of being headed across his path. The evidence simply is that when plaintiff did reach the left rear of the garbage truck he was three feet to the left of it and the defendant's truck was about even with the front of the garbage truck or approximately 35 feet away, as the truck was 40 feet long.

The testimony of the driver that the plaintiff suddenly emerged immediately from behind the truck and apparently headed across his path would not have to be accepted by the jury for two reasons. The above direct and circumstantial evidence tend to contradict him. Also, he is contradicted on another material matter; he testified the impact occurred 3 or 4 feet east of the center line of the street, whereas there is evidence that plaintiff was 2 feet west of the center line before the impact and was knocked north and somewhat west of the center line. Moreover, it is clear that neither the driver nor any other witness saw the impact and he could not know where plaintiff was at the time the rear corner of his truck struck the boy.

And so it is, we have the driver about 35 feet away when he states he first saw the boy with twelve feet to spare on the right of the truck into which he could turn, because no cars were parked there along the curb, and four feet on his left between him and the boy, with the boy riding three feet away from the side of the garbage truck.

In that situation the driver at 25 m. p. h., which is ordinarily not an excessive speed, applied his brakes so quickly and forcefully that when he pulled to the right the rear of the truck was caused to skid on a dry street toward the boy and strike him.

It is apparent, therefore, that the jury would have been warranted in finding that there was ample space in which plaintiff could have safely passed, that he was attempting to do so in a safe manner, that he was on his side of the street, that no emergency existed; that defendant was guilty of negligence in applying his brakes and causing his truck to skid against plaintiff; and that he did not have his vehicle under proper control and was not exercising due care for the safety of others using the street.

In this view of the evidence it, therefore, becomes apparent not only was there evidence of negligence of defendant to go to the jury, but also that the question of contributory negligence of plaintiff was for the jury. There is an ordinance relied on by plaintiff which prohibits the riding of bicycles on sidewalks. Plaintiff had a right to be in the street and to use of his side of the street, or to such part of that side as under the circumstances was not in use by the garbage truck, under Code Section 2671. Fuson v. Cantrell, 25 Tenn. App. 608, 609, 614, 166 S. W. (2d) 405.

It was for the jury to say whether plaintiff was guilty of want of ordinary care in the way he was using the street at the time, under the conflicting evidence.

Moreover, the proximate cause of the accident according to the evidence in favor of the plaintiff was the sudden application of the brakes and the turning to the left that caused the rear end to skid against plaintiff, for if

this had not occurred there was ample room for the plaintiff to pass safely between the vehicles.

The failure to observe the boys before they came from behind the garbage truck is of no value in the case, because they went first to the right and then to the left, which, if anything, would have tended to mislead the driver of the truck. The real, actual duty of defendant when he approached the place where he was to meet and pass the large garbage truck was to exercise care for the safety of others who might be using the street and to anticipate that somebody, whether he saw them beforehand, might come out or from behind the garbage truck, either a workman on the truck or another vehicle or even a pedestrian crossing the street at that point and, therefore, to have his vehicle under control. "He cannot assume that the road is clear, but he must at all times be vigilant and anticipate and expect the presence of others". Coca-cola Bottling Works v. Brown, 139 Tenn. 640, 645, 202 S. W. 926, 928.

Defendant in the brief has cited several cases in which the "sudden emergency" rule is stated. Moody v. Gulf Refining Co., 142 Tenn. 280, 218 S. W. 817, 8 A. L. R. 1243; Tenn. Elec. Power Co. v. Hanson, 18 Tenn. App. 542, 79 S. W. (2d) 818; Fergason v. Crawford, 24 Tenn. App. 646, 148 S. W. (2d) 45.

Before we could apply this rule as the case stands before us, we should have to find as a matter of law that an emergency existed. This we cannot do, because the theory of the plaintiff supported by evidence is that Coleman had ample room to pass between the trucks and was attempting to do so and that he did not pull across or toward the path of defendant's truck; defendant's theory is that Coleman suddenly emerged from behind the large

truck and across the path of defendant and was on the wrong side of the center of the street when struck.

This simply makes a conflict in the evidence as to whether an emergency existed, which is a jury question. Getz v. Weiss, 25 Tenn. App. 520, 160 S. W. (2d) 438; 60 C. J. S., Motor Vehicles, Section 257(b) note 14, p. 628.

The test of whether it existed and the steps taken to meet it are not to be determined by the driver's personal judgment or impulse, or nervous disposition, or lack of skill or experience in driving; but by the customary rule of how the ordinarily prudent person would have viewed and acted on the circumstances as they appeared to him. Fergason v. Crawford, supra.

I agree with what is said in the majority opinion on the construction of the ordinance requiring one to keep as near the right hand curb as practicable, but I am unable to agree that the evidence shows as a matter of law that the driver was acting as would the reasonable prudent person under the circumstances.