IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON

_____

BILLY J. JOHNSON, ET AL.,

      Plaintiff,

v.

STATE OF TENNESSEE,

      Defendant.

Claims Commission No. 101-959
C.A. No. 02A01-9609-BC-00224

Hon. Martha Brasfield,
Commissioner of Claims

FILED

September 24, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

MIKE MOSIER and J. COLIN MORRIS, Mosier & Morris, Jackson, Attorneys for Plaintiff.

JOHN KNOX WALKUP, Attorney General and MARY G. MOODY, Assistant Attorney General, Nashville, Attorneys for Defendant.

*REVERSED AND REMANDED*

Opinion filed:
_____

TOMLIN, Sr. J.

      Joshua David Johnson (hereinafter "Josh"), age 4, was struck and injured by a van driven by Leeann Waldrop on a Jackson city street. At the time of the accident Ms. Waldrop was an employee of the Tennessee Department of Human Services and was acting within the scope of her employment. Josh's father, Billy J. Johnson, (hereinafter "Plaintiff") filed a notice of claim on his behalf against the State of Tennessee, alleging negligence on the part of Ms. Waldrop. This claim was transferred to the Claims Commission, who after a hearing found that Plaintiff had failed to carry the burden of proof that Ms. Waldrop was driving her van at an excessive rate of speed or that she failed to keep a proper lookout ahead. The Commissioner found from all the proof that the proximate cause of the accident was Josh suddenly darting from behind a dumpster into the path of Ms. Waldrop's van. While Plaintiff has appealed, we are of the opinion that Defendant has more clearly stated the issues. They are: whether the Commissioner erred in finding that: (1) Ms. Waldrop was not driving the van at an excessive rate of speed at the time of the accident; (2) Ms. Waldrop was maintaining a proper lookout ahead; (3) the proximate cause of the accident was the act of Josh in riding his bicycle into the path of the state van. For the reasons hereinafter stated, we reverse the decision

of the Commissioner.

We adopt as our statement of facts a portion of the final order of the Commissioner, wherein the facts were set forth as she found them:

> The accident occurred at approximately 11 a.m. on June 4, 1991, on Westwood Gardens Drive in Jackson, Madison County, Tennessee. Westwood Gardens Drive is depicted in Exhibit 8, which was not drawn to scale. It is a two-lane street running north and south with angled parking on each side of the street. There are many residential units located on the street in which many children who play in this area live. There is a sidewalk which runs north and south between the angled parking spaces and the yards and the residential units. Because of the large number of children who live in the area, the posted speed limit is fifteen miles per hour.
>
> The southernmost end of Westwood Gardens Drive is a dead-end. The northernmost part of the street trisects into Westwood Avenue. A fire station is located at the southwest corner of this trisection. Directly south of the fire station, facing Westwood Gardens Drive is the Boys Club where boys and girls who live in the area go for activities during the summer. Snake Hill road trisects Westwood Gardens Drive on the east side of the street approximately mid-way between the dead-end section and Westwood Avenue. A corner market is located at the northeast corner of the trisection of Westwood Gardens Drive and Snake Hill Road. A Dempsey dumpster is located on the east side of the street in the angled parking spaces north of the corner market.
>
> On June 4, 1991, Josh lived with his parents, Billy J. Johnson and Phyllis Johnson, and two older brothers, ages six and eight, in Unit 29B which is a duplex unit located on the west side of the street to the south and west of the corner market. On this day, Josh's two brothers had gone to the Boy's Club. Josh, who was four, was too young to attend the club. He was outside playing with a neighbor's child. Once during the morning, he had come inside to get a drink of water and had returned outside. At some point, he left his friend and began riding a bicycle.
>
> Ms. Waldrop was a case worker for the Department of Human Services. At approximately 11 a.m. she had completed a visit with a client who lived at the dead-end section of Westwood Gardens Drive. She was familiar with the area and was aware of the large number of children who played in the area. She was proceeding north on Westwood Gardens Drive toward Westwood Avenue in a 1986 Dodge Van. She approached the market and noticed a large number of children and slowed down. Mr. Gerald Thomas, the Program Director of the Boy's Club, had accompanied this group of approximately fifty children from the Club to the market so that they could purchase their lunches. He was standing in the parking lot at the market when he observed Ms. Waldrop as she proceeded north on Westwood Gardens Drive. At approximately the same time, he also observed Josh who was riding his bicycle on the sidewalk on the east side of the street (same side as the market) and heading south toward the market. He realized that Josh was about to turn into the street but did not see the actual turn. Josh did turn into the street and was struck by Ms. Waldrop's van. Ms. Waldrop never saw Josh. She heard a loud noise, looked in her rearview mirror, saw the child lying in the street, realized she had struck him with her van and stopped. The bicycle was dragged under the van from the point of impact to the point

where Ms. Waldrop stopped the van.

In this case Plaintiff has the duty of proving the following elements of his claim: (1) a duty of care owed by the Defendant to the Plaintiff; (2) conduct of the Plaintiff falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause. McClenahan v. Cooley, 806 S.W.2d 767, 774 (Tenn. 1991).

The scope of this court's review of a decision of the Claims Commissioner is *de novo* upon the record before the Commissioner. All findings of fact made by the Commissioner come to this court with a presumption of correctness, unless we find that the evidence preponderates against these findings, requiring an affirmance by this court. T.C.A. § 50-6-225(e)(2).

## I. The Speed Issue.

There were three witnesses who testified concerning the issue of Ms. Waldrop's speed. One was Ms. Waldrop herself. The other, also an eyewitness, was Gerald Thomas, director of the Boys Club, located there in Westwood Gardens. The third was the investigating officer of the Jackson Police Department, who, in addition to testifying as to the location of the state van and the slide marks made by the dragging of the bicycle, also testified as to only what Ms. Waldrop told him in regard to her speed at the time he made his investigation at the scene.

Larry Freeman, a veteran of twenty-three years on the Jackson Police Department, was the investigating officer. He testified that at the scene Ms. Waldrop stated that she was driving north on Westwood Gardens when Josh came out from behind a dumpster [located to her right] riding a bicycle and that he came out so fast that she did not realize what had happened until she looked in the rearview mirror and saw the child lying in the street. Officer Freeman further testified that Ms. Waldrop stated that "she was not traveling any more than twenty miles per hour and probably not that fast." The posted speed limit is concededly fifteen miles per hour.

Photographs taken by Officer Freeman were introduced at the hearing below. One of the photographs was taken while the state van was still parked in the roadway

3

where it had come to a stop after the accident. While the photograph shows no skid marks from tires, it does show scratch marks or "slide marks" as described by the officer. These slide marks, continuous in nature, were described as having been made by the bicycle of the lad that had been caught underneath the van. While the officer did not measure the length of these marks, by observing them in the photograph from the beginning point up to the rear of the van it would appear to be clearly at least fifty feet, if not slightly more.

The witness Thomas, program director for the Boys Club, was accompanying a group of boys from the club, some fifty in number, down to a neighborhood market in the project to get lunch. Thomas was standing near the market, south of the dumpster that Josh came out from behind when he observed the state van driven by Ms. Waldrop pass by him at the market. Thomas was not exact in his testimony but, on one occasion he stated that she was going at least twenty to twenty-five miles per hour and subsequently that she was traveling between fifteen to twenty-five miles per hour. In response to a question as to whether the speed Ms. Waldrop was traveling was safe under the circumstances, Thomas responded in the negative, stating that they had problems in this housing project all the time with children crossing the street and that one had to be very cautious in this area.

Ms. Waldrop testified that she had been employed by the Tennessee Department of Human Services for fourteen years and that she had been in and out of Westwood Gardens for many years. She was fully aware that many children played unsupervised in the streets. She stated that just before the accident she had realized that it was near lunch time and she was indecisive as to whether to go to her home, in the neighborhood, for lunch or to return to the office. She had made the decision to return to the office and was proceeding north to Westwood Avenue when the accident happened. She stated that while she did not see her speedometer, she was of the opinion that she was going fifteen to twenty miles per hour.

Most respectfully, in our opinion the evidence preponderates against the finding of the commissioner that the speed of Ms. Waldrop was not a contributing cause or approximate cause of the accident.

4

## II. Maintaining a Proper Lookout.

A driver of a vehicle is required to exercise ordinary care in maintaining a proper lookout, such as an ordinary person would do under the same or similar circumstances. Coleman v. Byrnes, 242 S.W.2d 85 (Tenn. App. 1950).

Gerald Thomas, an eyewitness to many of the events herein, testified that just before the accident Josh was riding his bicycle in a southerly direction on the sidewalk on the east side of the street. At that time Ms. Waldrop was driving north on the same street, with some distance between the two parties involved. Ms. Waldrop's view of young Josh to the right side of the street was blocked in part by the presence of a large dumpster container, located in the parking area, along with some parked automobiles. Thomas testified that about two to three seconds elapsed between the time Josh turned to his right to cross the street, placing him in the path of Ms. Waldrop's van, and the sound of the impact of the van striking Josh and his bike.

Ms. Waldrop testified that she never saw Josh or his bike, and thus never applied her brakes, until, after hearing a noise which was apparently the scraping of the bicycle under the van on the pavement. She looked in her rearview mirror, saw the lad lying in the street behind the van and thereupon applied her brakes, bringing the van to a stop.

In addition, a photograph of the van taken by Officer Freeman at the scene shows that the damage from the collision was on the front of the van, to the left or on the driver's side of the front. The photograph showing the bicycle under the driver's side of the van and the location of the slide marks in the asphalt made by the bicycle placed the van near the center of the road. Albeit a short distance, Josh and his bicycle could have been seen by a motorist in the roadway as he traveled from the west side of the dumpster to the point in the roadway where the collision occurred. We are of the opinion that the evidence preponderates against the finding of the commissioner that at the time of the accident Ms. Waldrop was maintaining a proper lookout ahead and acting in a reasonable and prudent manner.

## III. Proximate Cause.

In her final order, the Commissioner was of the opinion that proximate cause was the determinative issue in this litigation. We agree. "What is meant by 'proximate

5

cause' is not necessarily that which is next or last in time or place, but that which is a procuring, efficient and predominate cause. Closeness in causal relation, rather, is the meaning." (*Citations Omitted*). Coleman v. Byrnes, 242 S.W.2d 85, 91 (Tenn. App. 1950), See also Nash v. Love, 447 S.W.2d 593, 598 (Tenn. App. 1968). Considering our disposition of the prior two issues, we are of the opinion that the evidence preponderates against the commissioner's finding that Josh's act of darting in front of Ms. Waldrop's vehicle was the proximate cause of the accident and his injuries. In our opinion, there is sufficient evidence to establish that excessive speed under the circumstances and the failure of Ms. Waldrop to maintain a proper lookout ahead each could serve as a proximate cause.

Accordingly, the judgment of the commissioner is reversed. This cause is remanded to the Tennessee Claims Commission for such further proceedings as are necessary not inconsistent with this opinion. Costs in this cause on appeal are taxed to Defendant, for which execution may issue if necessary.

_____
TOMLIN, SR. J.


_____
CRAWFORD, P. J. W.S.        (CONCURS)


_____
HIGHERS, J.                (CONCURS)


6