# SOUTHERN BELL TEL. & TEL. CO. v. SKAGGS.— 241 S. W. (2d) 126.

Western Section. Jan. 11, 1951.

Petition for Certiorari denied by Supreme Court, May 12, 1951.

550

Sam P. Walker, of Memphis, for plaintiff in error.

Harold R. Ratcliff, of Memphis, for defendant in error.

TIPTON, Sp. J. For convenience the parties will be referred to as plaintiff and defendant as they were in the court below.

The plaintiff sued the defendant for $21,500 damages for personal injuries and property damage, and in his declaration, which is in three counts, alleged that on January 12, 1950, he was driving his Pontiac automobile in an easterly direction upon Highway 70 in Shelby County, and that when he reached a point on said highway where the same crosses the Louisville & Nashville Railroad tracks by means of an overpass, he discovered a truck owned and operated by the defendant parked in his traffic lane a short distance east of the bridge and immediately below the crest of the hill, so that persons driving along the highway from the west were unable to see said truck parked in the highway, and that the plaintiff was unable to see the same until he was immediately upon it; that the highway at this point is asphalt and slippery when wet; that the accident happened at dusk, the sky was overcast, that it was raining and that said truck was not lighted, no flares or other warning signs were placed upon either side of the truck, and that no one was stationed west of the truck to flag traffic approaching from the west, and that the plaintiff was almost upon said truck before it could be seen, and

before he could stop his car or swing to the left, he ran into the rear of said truck, as a result of which he suffered serious and permanent personal injuries, as well as damage to his car.

The first count of the declaration charges common law negligence, grounded upon the alleged parking of said truck immediately below the crest of the hill upon the main travelled portion of said highway, failing to have any lights thereon, or to give any warning in any way to motorists approaching from the west of its presence, while the second count is based upon the statute, Code, Section 2690, prohibiting the parking of vehicles upon the improved or main travelled portion of a highway. The third count, to which Motors Insurance Company was joined by amendment as a party plaintiff, sought a recovery for damage to said automobile.

In addition to pleas of the general issue and contributory negligence, the defendant specially pleaded that said truck was not parked below the crest of a hill, but that the same was parked at the west end of said overpass and was visible for a long distance by a person approaching from the west, and that if plaintiff did not see said truck in time to avoid colliding with it, this was due to his own negligence. The plea denied that the accident happened at dusk or that visibility was bad, and averred that there was no necessity for lights, that a "men-working" sign was placed some distance west of where said truck was parked, and that the defendant's foreman was on the highway to flag traffic, but that the plaintiff ignored both said sign and the man flagging traffic and continued at a high rate of speed until he ran into said truck. The plea further averred that, on this occasion, the employees of the defendant were engaged in repairing damage done to its lines and cables by a severe ice storm

a few days before the accident, that it parked said truck for the purpose of unloading equipment needed to make said repairs, and that there was no other place to park the same, and denied that such parking was negligence, either common law or statutory.

The case was tried to a jury, which returned a verdict for the plaintiff in the following language: "We the jury find for the plaintiff $5,000.00 for personal injuries and $0 for personal property damage, C. D. Richards, foreman"

Its motion for a new trial having been overruled, the defendant has perfected its appeal to this Court and assigns error.

The first assignment of error is that there is no evidence to support the verdict, and this assignment necessitates a review of the facts.

As is often true in negligence cases, the evidence offered by the plaintiff and that offered by the defendant is in hopeless conflict, both as to the point where the accident occurred, the weather conditions prevailing at the time, the alleged acts of negligence on the part of the defendant, and the alleged contributory negligence of the plaintiff; however, viewing the testimony in the light most favorable to the plaintiff, as we are required to do because of the jury verdict in his favor, there is material evidence in the record from which the jury could have found the facts to be as follows:

The accident happened about 4 P.M. on January 12, 1950, on U. S. Highway 70 some 2 miles west of Arlington in Shelby County. At this point said highway, which runs in a general easterly and westerly direction, crosses the tracks of the Louisville & Nashville Railroad Company by means of an overpass consisting of approaches of some length both to the east and to the west of the

railroad tracks, with a bridge some 170 feet long spanning the tracks. In order to obtain the height necessary to clear the tracks, both of these approaches are built upon an earth fill, resulting in the bridge being at the crest of a hill formed by these approaches.

The lines and cables of the defendant which were located on the south side of said railroad tracks had been severely damaged by an ice storm occurring a few days before and, on the afternoon of the accident, it had a repair crew engaged in repairing this damage, in the course of which one of the defendant's employees parked one of its trucks in the east bound traffic lane of the highway at the east, or Arlington end of this bridge, in order to unload some material for use in such repairs, and, while said truck was so parked, the plaintiff, who was driving a 1949 Pontiac automobile east on said highway from Memphis to his home in Arlington, ran into the rear end of said truck, resulting in the plaintiff receiving severe personal injuries, as well as suffering considerable car damage. At the time the accident occurred, it was almost dark, and was raining hard, clouds were hanging low, and visibility was very poor.

As the plaintiff came up the west approach to the bridge, he was travelling about 40 miles an hour and was keeping a lookout ahead, but the truck was not visible until his car got on the west end of the bridge, at which time he saw the truck parked in his traffic lane at the east end of the bridge. The pavement at this point is asphalt or blacktop and was very slick, and, as soon as he saw the truck, the plaintiff applied his brakes, but because of the slick pavement they locked, whereupon the plaintiff released his brakes momentarily and then applied them again, but this caused the car to slide again without checking its speed, and, being unable to stop, the

plaintiff crashed into the rear of the parked truck with the results stated above. The truck had no lights burning on it, nor did the defendant, either by the use of flares, road signs, flagmen or in any other way, give any warning to east bound traffic of the fact that the truck was parked in the south, or right hand, traffic lane.

■ It will be plainly seen from the above statement of facts that there was ample evidence to make the question of whether the defendant was negligent and whether its negligence was the proximate cause of the accident a matter to be determined by the jury, and the first assignment of error is overruled.

The second assignment of error complains of the failure of the trial judge to direct a verdict in favor of the defendant, it being strongly insisted that the plaintiff was guilty of contributory negligence as a matter of law, in that he saw or should have seen the parked truck in ample time to avoid the collision, either by stopping his car or by passing around the truck to its left.

For a number of years, the basic rule, as stated in West Construction Company v. White, 130 Tenn. 520, 172 S. W. 301, was that it was negligence as a matter of law for a person to operate an automobile at night at a rate of speed faster than would permit him to stop or avoid an obstruction within the range of his lights; however, this rule was modified, if not superseded, in the later case of Main Street Transfer & Storage Company v. Smith, 166 Tenn. 482, 63 S. W. (2d) 665, 668, in which the Supreme Court, in holding that the failure of the plaintiffs to see a large unlighted truck parked below the crest of a hill at a point where, because of the hill, it was not revealed by the lights of plaintiffs' car until the car was too close to it to be stopped, was not contributory

negligence as a matter of law but that the negligence of the plaintiffs was a jury question, said:

"(3) The accident in which petitioners were injured occurred on a state highway, between two populous communities. This highway, as well as others of like character, was built to accommodate vehicles traveling at a high rate of speed. Speed as a factor of negligence in the operation of an automobile has been rendered of minor importance by common experience and by the removal of an arbitrary miles per hour limit from the statutes. These conditions have relatively increased the degree of negligence and danger involved in the parking of stationary vehicles or other obstructions on the paved surface of a highway. Travelers have become more confident of a free and unobstructed passage ahead on the highways. In these circumstances, we cannot now say with confidence, as a matter of law, that a person of ordinary prudence and caution would have reduced his speed below the rate of 25 miles an hour on approaching the crest of a grade, under the conditions in which petitioners were placed, because the surface of the pavement could not be seen beyond the crest. They had the legal right to expect that an obstruction just beyond the crest would be evidenced by a warning light, and whether they were proceeding negligently was at least a question of fact for the jury.

"(4, 5) Adhering to the general rule that it may be negligence in law to operate an automobile through darkness at a rate of speed which will not permit the avoidance of an obstruction disclosed by the rays of the lights with which the automobile is equipped, we are of the opinion, and so rule, that exceptional circumstances will render the rule inapplicable, as contrary to the practice and experience of persons of ordinary caution and

prudence. The emergencies and hazards of present-day travel by automobile are many and varied, and we think no arbitrary or universal definition of the circumstances which will render the rule inapplicable is possible. The facts and circumstances of the cases in which the rule is invoked, weighed in the light of observation and experience, must control and direct the ruling of the court in each particular case, as in other negligence cases.''

This rule was reaffirmed in the case of Virginia Avenue Coal Company v. Bailey, 185 Tenn. 242, 205 S. W. (2d) 11, and has been applied in numerous cases involving varying circumstances, and, while these cases deal with accidents occurring at night, we see no practical difference, so far as the application of the rule is concerned, between an accident occurring at night and one occurring during the day time, when the visibility of the driver of a car is impaired either by weather conditions or by the terrain, the true rule being that drivers on highways must use reasonable care to avoid a collision with another vehicle improperly parked on the highway, and reasonable care under the circumstances is a flexible standard, its presence or absence being preeminently a jury question. Virginia Avenue Coal Company v. Bailey, supra.

We do not consider it necessary in disposing of this assignment to again review the testimony in detail, but, as heretofore stated, the testimony of the plaintiff is that, because of the hill and weather conditions, he could not see the truck until he reached the west end of the bridge and that as soon as he saw the truck in his path, when he was approximately the length of the bridge away from it, a distance which the plaintiff estimated to be about 60 feet, but which in reality was 170 feet, he applied his brakes and made every effort to stop his

car, but could not do so in time to avoid a collision because of the wet, slippery pavement. It will be noted in this connection that the car of the plaintiff was travelling some 60 feet per second and that it took him not more than three seconds to go from the point where he testified that he could first see the parked truck to the point of the collision, and, under the circumstances, we think the question of whether the plaintiff should have stopped his car in that distance was to be determined by the jury.

Nor can we say that the failure of the plaintiff to turn to the left and thus avoid a collision was contributory negligence as a matter of law.

On this point, the plaintiff testified as follows:

"Q. Did you make any attempt to cut to your left to go around the truck? A. No. sir.

"Q. Why? A. Because it is a heavy traveled highway, especially that time of the afternoon, and that would have been leaving my side of the road altogether.

"Q. Are you familiar with the traffic on that highway? A. Yes, sir.

"Q. Tell us whether few or many cars pass over that bridge at that time in the afternoon? A. Yes, sir, sometimes one right behind the other for a quarter of a mile."

Accepting this testimony as true, the plaintiff was confronted by an emergency caused by the negligence of the defendant requiring him to act instantly, and, in such case, one is not guilty of negligence as a matter of law if he makes such choice as a person of ordinary prudence placed in such a position might make, even though the choice which he makes is not the wisest choice. Tennessee Electric Power Company v. Hanson, 18 Tenn. App. 542, 79 S. W. (2d) 818.

The defendant introduced certain photographs of the bridge and the west approach taken at various distances

west of the west end of the bridge, and insists that these photographs clearly show that the truck was plainly visible to the plaintiff when he was a considerable distance west of the west end of the bridge, and seeks to apply the rule of incredible evidence to the testimony of the plaintiff that he could not see this truck until he got on the west end of the bridge.

There can be no doubt that a person is required to see that which is plainly visible and, if the undisputed facts show that, had he looked, he would have seen it, his testimony that he looked and did not see it is incredible and will be rejected. Harber v. Wallace, 31 Tenn. App. 1, 211 S. W. (2d) 172.

However, the record shows that these photographs were taken by the witness, Marrs, a man 5 feet 11 or 11½ inches tall, from his eye level while standing, which is some distance higher than the eye level of the plaintiff when seated in his automobile, and, in addition, weather conditions at the time the photographs were taken were not similar to those at the time of the accident according to the testimony of the plaintiff and his witnesses, these photographs apparently having been taken when the sun was shining, while, as has already been stated, at the time of the accident it was almost dark, raining hard, and visibility was very poor. Under the circumstances, we do not think that we would be justified in rejecting outright the testimony of the plaintiff and his witnesses that on that particular occasion, the parked truck could not be seen until the plaintiff got to the west end of the bridge as being contrary to established physical facts and, therefore, incredible.

We think that the question of the plaintiff's contributory negligence, like that of the defendant's negli-

gence, was for the jury, and the second assignment of error is therefore overruled.

The third, fourth and fifth assignments of error, which are related and which will be considered together, complain of the language used by the trial judge in charging the theory of the plaintiff and in refusing to charge a special request of the defendant, the question raised by these assignments being that, although the declaration alleged that the truck of the defendant was parked a short distance to the east of the bridge, the plaintiff's testimony showed that the back end of the truck was at the east end of the bridge, and the trial judge, in charging the theory of the plaintiff, followed the testimony of the plaintiff rather than the declaration.

We think that any variance between the allegations of the declaration in respect to this matter and the charge cannot be considered consequential, and, if the trial judge was in error, the error was harmless and could not have affected the result of the trial, and by statute, Code, Section 10654, this Court is forbidden to reverse a judgment unless it appears that the error complained of affected the result of the trial, and these assignments are overruled.

The sixth assignment of error is directed to the verdict of the jury, it being insisted that, because the jury awarded damages to the plaintiff for personal injuries but failed to make an award for property damage, the verdict is inconsistent, it being the position of the defendant that this is equivalent to a verdict in favor of the plaintiff upon the first two counts of the declaration, but in favor of the defendant upon the third count.

If the jury had actually found for the plaintiff upon the counts involving personal injuries and for the defendant upon the count involving property damage, a serious

question would be presented; however, it appears from the verdict, which is set out in full above, that the jury returned a general verdict for the plaintiff, but simply failed to make an award to the plaintiff for property damage.

In the·unreported opinion of this Court in the case of Raymond Wiggins v. Luther Mullins, filed May 3, 1950,[1]

1. WIGGINS v. MULLENS.

SWEPSTON, J. The determinative question on this appeal in error is whether there is any evidence to support the verdict.

The pertinent facts are that the three year old son of Luther Mullens was struck and injured by the automobile owned and being driven by Raymond Wiggins along a street in Jackson. The child suffered a broken leg and bruises. The father sued in the General Sessions Court to recover expenses of treatment of the child, was cast in the suit and appealed to the Circuit Court.

The father, as next friend of his son, brought a suit in the Circuit Court for the benefit of the child. The suits were tried at the same time to a jury. Verdict was rendered against the child, but in favor of the father in the respective suits. Defendant Wiggins has appealed in error from the latter verdict and judgment and assigned error, the substance of which is that (1) there was no evidence to support the verdict and that his motion for a peremptory instruction should have been sustained and (2) a new trial should have been granted him because on subsequent examination three jurors testified that some of the jury did not think the defendant was guilty of negligence and some would not have agreed to a verdict but they thought they were doing the right thing by giving a judgment to the father for his expenses.

In defendant's argument stress is laid upon the contrast or inconsistency between the two verdicts, as evidence that the jury actually failed to find negligence of the defendant.

The evidence was in conflict but for the plaintiff the testimony was as follows:

The father testified that he was in the rear of his home when he heard an "awful sound" out front and when he ran out to the street he saw his son lying in the street; that on information of an eyewitness across the street as to where the impact occurred he found the distance from the point of impact to where the boy was lying to be thirty eight feet, and from the point of impact to where the defendant's car came to rest to be eighty feet.

Witness Varnell testified he heard a terrific noise and that he helped the father make the measurements as stated.

Judge Swepston made an exhaustive review of the authorities, both in this State and other states, upon the question of inconsistent verdicts. In that case, a father sued as next friend of his son to recover for personal injuries to the child, and also sued in his own right to recover expenses of treatment of the child. The suits were tried together to a jury, which found against the

Witness Cisco testified he was in his home across the street looking through a window and saw the entire occurrence; that the car was traveling thirty to forty m. p. h. and was about eight feet away when the child stepped from the front of a car parked at the curb into the street; the street is about forty feet wide and defendant was near the middle of the street.

It was stipulated that the speed limit was thirty m. p. h. by ordinance.

In consideration of the question whether there is any evidence we do not take into consideration the contradictory evidence of defendant.

Under the well established rule we may consider only such evidence of both sides and reasonable inferences therefrom as are favorable to the successful party below and discard all countervailing evidence.

We cannot weigh the evidence on appeal from a jury verdict.

In this light, we are of opinion that there was material evidence requiring submission of the case to the jury.

Referring to the testimony of the three jurors, which we have not deemed necessary to detail, it amounts at best to an effort by counsel to show by some of them that they did not think defendant was negligent. It is fundamental, however, that a juror will not be allowed to impeach his verdict by statements subsequently on the motion for a new trial, or otherwise, that he believed one way while voting the opposite, or that he misunderstood what he was called on to do, or what influenced him, unless, of course, that influence was improper, illegal or corruptive. He will not be heard to stultify himself. Waller v. Skelton, 3 Tenn. App. 103, 212 S. W. (2d) 690.

Hence we cannot consider the testimony of those jurors for the purpose indicated.

Counsel raises the question rather inferentially than directly, however, that the two verdicts are inconsistent and that since the jury found against the child they must have found defendant was not negligent, and therefore, there was no evidence to support the verdict in favor of the father. He does not develop the point by reference

child but in favor of the father, and, upon appeal, it was contended that the two verdicts were inconsistent and, since the jury found against the child, they must have found that the defendant was not negligent and, therefore, there was no evidence to support a verdict in favor of the father.

---

to the authorities, but some jurisdictions so rule in the few cases where the question has been raised.

The exactly parallel factual situation has arisen in the following cases and the verdicts have been held inconsistent and the cases reversed and remanded for new trial. Muha v. De Luccia, 136 A. 332, 5 N. J. Misc. 274; Reilly v. Shapmar Realty Co., 267 App. Div. 198, 45 N. Y. S. (2d) 356. In the first case the Court said: "This verdict cannot stand. It is self-contradictory. In one breath the jury declares that the accident to the boy was not the result of any negligence on the part of the defendants, and immediately afterwards it declares, by necessary inference, that the contrary is the fact, for, unless it so found, it was not justified, under the charge of the court, in awarding to the father compensation for the expenses incurred by him as a result of the injuries received by his son."

The great weight of authority, however, militates against this view. The almost universal rule is that (1) the parent and child are not in privity, (2) their respective rights of action are separate and different, and (3) a judgment for or against one is not res adjudicata as to a subsequent action by the other. 39 Am. Jur. 728, sec. 83 and notes; 133 A. L. R. 202 citing Guy v. Fisher & B. Lumber Co., 93 Tenn. 213, 23 S. W. 972, where it was held, judgment defeating father's suit for want of negligence of defendant is not competent evidence for defendant in a subsequent suit by the minor against the same defendant for his injuries; Shiels v. Audette, 119 Conn. 75, 174 A. 323, 94 A. L. R. 1206; Rabil v. Farris, 213 N. C. 414, 196 S. E. 321, 116 A. L. R. 1087 citing Forsythe v. Central Mfg. Co., 103 Tenn. 497, 53 S. W. 731; (same rule announced). The rule is applied in the case of actions of husband and wife respectively where wife is injured. Laskowski v. People's Ice Co., 203 Mich. 186, 168 N. W. 940, 2 A. L. R. 592.

The above annotations show also that the fact that the father has sued as next friend for the benefit of the child does not prevent his recovery in a subsequent suit in his own behalf for expenses and loss of services of the child.

It would seem to follow from the foregoing that it makes no difference if the two separate and independent causes of action are consolidated for trial and tried simultaneously to the same jury. They

In deciding this question adversely to the appellant, the Court, after holding that there was no privity between the father and the son and that their respective rights of action were separate and different, said: "It could be, therefore, in the instant case that the jury did find negligence but was of opinion that, since the injury

would fall in the general category of Texas Co. v. Ingram, 16 Tenn. App. 267, 288, 64 S. W. (2d) 208, where mother and child were riding in the same automobile when injured by collision with another car. The jury trying both cases found for the mother but against the child. These verdicts were held, not inconsistent. See also, Nashville, C. & St. L. Ry. Co. v. White, 158 Tenn. 407, 15 S. W. (2d) 1; Dumphy v. Thompson, 130 A. 639, 641, 3 N. J. Misc. 1086, last par.; Salmon v. Tuthill, 157 A. 848, 10 N. J. Misc. 96; Rich v. Central Elec. Foundry Co., 121 N. J. L. 481, 3 A. (2d) 584, 586.

In the first of these three New Jersey cases, from which jurisdiction comes Muha v. De Luccia, supra, several members of a family riding in the same car sued a third party for negligence. Verdicts in the same trial were rendered for some of them and against the others. On appeal the court said there was no inconsistency, because the proof could have been that some were injured but others not.

In the second case the wife lost her suit for personal injuries, while the husband recovered the damages to his car which the wife was driving.

In the third, the child recovered for injuries, but the father, a doctor, was denied his claim for expenses, because the proof left it in doubt as to whether a brother doctor would charge for his services, it being a custom of the profession to make no charge under the circumstances.

It could be, therefore, in the instant case that the jury did find negligence but was of opinion that, since the injury to the child was said by the attending physician to be not permanent, the pain and suffering, was of short duration and not substantially compensable in money in a child so young, whereas the father's expenses of $425.06 was exactly determinable in money, thereby doing what the jury believed to be substantial justice.

Without attempting to rationalize the holding of the two cases, supra, holding such a verdict to be inconsistent we are of opinion that consistent with the general rule in Tennessee and with the weight

to the child was said by the attending physician to be not permanent, the pain and suffering, was of short duration and not substantially compensable in money in a child so young, whereas the father's expenses of $425.06 was exactly determinable in money, thereby doing what the jury believed to be substantial justice.''

In the instant case, the defense of contributory negligence was vigorously pressed and, following the charge upon the question of remote contributory negligence, the jury may have found the plaintiff guilty of remote contributory negligence and mitigated its award of damages in the amount of the repair bill upon the car. Or, it may have considered the amount of the repair bill unreasonably high, and that being the only evidence before it upon the question of property damage, disregarded it entirely. Or, it is possible that the failure of the jury to award property damage was due to prejudice against the insurance company which was joined as co-plaintiff.

But, in any event, the defendant is in no position to complain because the jury, by its verdict, fixed liability against it and then failed to award damages, because any error committed thereby was in its favor, and it is too well settled to require citation of authorities that,

---

of authority as to the causes of action being separate and different these verdicts are not inconsistent.

D. B. Loveman Co. v. Bayless, 128 Tenn. 307, 160 S. W. 841, holding that in the case of master and servant where the liability of the master, if any, is solely on account of the negligence of the servant under respondeat superior, a verdict either in the same trial or in a separate trial in favor of the servant is an exoneration of the master, is not in point, because the liability of the master is strictly derivative and a contrary rule would destroy the right of the master who is cast to recover against his negligent servant.

All assignments are overruled, judgment will be entered here for $425.06 with interest from July 5, 1949 and costs.

Baptist, J., and Wayne Cox, Sp. J., concur.

upon appeal, a party will not be heard to complain of error in the trial court unless he is adversely affected thereby.

 We do not think that the verdict of the jury was inconsistent, and any error therein was against the plaintiff and in favor of the defendant, so this assignment of error is also overruled.

It results, therefore, that all assignments of error are overruled and the judgment of the Circuit Court of Shelby County is affirmed at the cost of the defendant and its surety upon its appeal bond herein.

Anderson, P. J., and Swepston, J., concur.