Robert Gaston CLINE, Plaintiff,

v.

UNITED STATES of America, Defendant.

Robert Gaston CLINE, surviving husband of Carolyn S. Cline, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. Nos. 1551, 1552.

United States District Court
E. D. Tennessee,
Northeastern Division.

Sept. 7, 1962.

Franklin Park, Jefferson City, Tenn., John F. Dugger, Morristown, Tenn., for plaintiff.

J. H. Reddy, U. S. Atty., Chattanooga, Tenn., Ottis B. Meredith, Asst. U. S. Atty., Knoxville, Tenn., for defendant.

NEESE, District Judge.

These are actions against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 et seq. The plaintiff Cline in Civil Action No. 1551 sues for $25,000 for his own injuries, loss of earnings and earning capacity, and for loss of the consortium of his deceased wife, and in Civil Action No. 1552 for $200,000 for the wrongful death of his wife Carolyn S. Cline, who originally sued for her injuries, such right of action passing to her husband at her death. T.C.A. § 20–607.

The claims emanate from a collision involving (1) the 1950 Plymouth automobile of J. D. Brooks, a rural mail carrier who was then and there engaged in delivering mail out of the Russellville, Tennessee post office, (2) a 1961 Chevrolet pickup truck driven by Grant Mahan, Jr., in which his father, Grant Mahan, Sr., was a sleeping passenger, and (3) the late Mrs. Cline's 1955 Ford automobile which was being driven by the plaintiff Cline. All persons concerned in the accident were riding in the front seats of the respective vehicles. The accident occurred in the rain shortly after noon, October 3, 1961, at a point approximately four miles west of Russellville on U. S. Highway Route '# 11–E, which is a principal two-lane thoroughfare.

The Plymouth automobile was being utilized at the time in the delivery of mail to rural boxes on the south side of the highway, employing the eastbound traffic lane and its vicinage. To be able to reach the mail box of Earl (Park) Williams without alighting from his car, the mail carrier Brooks drove the Plymouth

directly behind an automobile parked just off the highway pavement in front of the Williams' residence.

Having completed the mail deposit, the carrier backed the Plymouth about 15 feet in order' to clear the parked automobile in the process of returning onto the highway. As he brought the car to a stop following the backing movement, Brooks looked into his rear-vision mirror and observed the Ford approaching him from the west. He estimated the Ford to be 800 or 900 feet behind him and concluded there was ample time to resume his former course in the eastbound traffic lane before being overtaken by the approaching vehicle. The Plymouth was then driven forward, somewhat parallel with the easternmost edge of the highway pavement, at a slow, but progressively increasing rate of speed, in returning to the traffic lane. It did not reenter the eastbound traffic lane at right angles but proceeded slowly at an angle in passing the parked automobile. At times its left wheels were on and right wheels off the pavement. The carrier estimated he had driven a distance of 105 to 120 feet between the time he stopped and the moment of the accident. He estimated the maximum speed to which the Plymouth accelerated before the ensuing accident to have been about 20 miles per hour. He also testified that he failed to re-examine the relative positions of his vehicle and that of the Cline Ford at any time between his aforementioned glance into the rear-vision mirror and the occurrence of the accident.

While the Plymouth was engaged in the above-described maneuver, with the Ford approaching from the west, the Chevrolet pickup truck was proceeding from the east in its proper (or northern) lane of the highway. Mahan, Jr., estimated its speed at about 40 miles per hour, testifying that he had reduced his customary speed after having earlier that morning witnessed another motor vehicle accident.

The Clines had left their respective places of employment in Morristown, eaten their lunch, and were driving during the remainder of their lunch hour some six and one-half miles to Russellville to get their child and a babysitter.

As the three vehicles converged at about the same place and at about the same time, the exact position of the Plymouth cannot be located by the Court, but suffice it to say it was east of the Williams' mail box. The Ford, at about 565 feet westwardly from a point in the highway directly in front of the mail box, was in a depression at the foot of a slight grade in the roadway. This, at one point, made only the top of the Ford and a portion of its hood visible east of the crest of the hill where the mail box is located, according to the witnesses Mahan, Jr., and Robert Clevenger.

When the Ford had progressed to a point within 50 to 100 feet of the rear of the Plymouth, the plaintiff Cline first became aware that the Plymouth was moving in the process of re-entering the highway and had become an obstruction in the traffic lane ahead. Cline immediately applied the Ford's brakes, and the car began to skid and slide. The Ford eventually reached the left rear portion of the slowly-moving Plymouth, brushing it at the left rear bumper, the Ford then veering, somewhat perpendicular to the Plymouth, into the westbound lane of traffic and directly into the path of the oncoming Chevrolet pickup truck, the Ford being broadside across the said lane and continuing to skid or slide. Being engrossed with trying to avoid the Plymouth, the plaintiff Cline did not become aware of the approach of the pickup truck until his wife screamed a warning. Insufficient time remained for the plaintiff Cline to regain control of the Ford or change its course, and its left side crashed violently into the front of the truck, bringing the truck to an immediate halt.

The Court is unable to fix the speed of the Ford, various witnesses estimating same to have been from 45 to 60 miles an hour. This was from five to 20 miles an hour below the lawful limit. The impact occurred at a point 80 feet east of the mail box, with the Ford coming to rest against a bank and in a roadside

ditch about 28 feet further east from the point of the collision. Another vehicle, following the truck in the westbound traffic lane at a speed estimated to be 45 to 50 miles an hour, was stopped, when necessary in an estimated four or five car lengths. No signs were emplaced in the area of the accident warning that the highway was slippery when wet, and the Ford was equipped with new tires with good treads.

Mr. and Mrs. Cline were injured in the collision. Mrs. Cline died on November 30, 1961 from complications arising from her injuries. Including a property loss of $600, Mrs. Cline's special damages amounted to an aggregate sum of $5,657.-20. She was 24 years of age at the time of her injuries and was earning an average wage of $76 a week. Her health was theretofore good. She suffered intense pain in the period between her injuries and subsequent death. Except for incidental residual complaints, Mr. Cline had recovered from his injuries by the date of the trial.

■ The defense denied: that the mail carrier Brooks " * * * suddenly and without warning (pulled) onto the highway immediately in front of plaintiff," that " * * * plaintiff's vehicle was then on its right-hand and proper side of the highway, traveling at a reasonable rate of speed under the circumstances * * *," and that " * * * plaintiff was suddenly confronted by the presence of (the mail carrier's) automobile immediately in front of him. * * *" The defense further alleged contributory negligence on the part of Cline as driver of the Ford vehicle, which, if true, would not only bar a recovery by Cline in Civil Action No. 1551 for his injuries but also would be imputable to Mrs. Cline as owner-occupant and thus bar recovery in Civil Action No. 1552. Snyder et al. v. Mo. Pac. R.R. Co. et al., 183 Tenn. 471, at 481 [9], 192 S.W.2d 1008; Angel v. McClean, 173 Tenn. 191, 116 S.W.2d 1005.

■ "An employee of the Federal Government must obey the traffic laws of the state although he may be traveling in the ordinary course of his employment. No law of the United States authorizes a rural mail carrier, while engaged in delivering mail on his route, to violate the provisions of the state law enacted for the protection of those who use the highways." State of Oklahoma v. Willingham, D.C.Okl. (1956), 143 F.Supp. 445, 448; see also Christiansen v. Witte, D.C. Or. (1959), 175 F.Supp. 759.

■ The Court finds that the proximate cause of the injuries and damages herein was the act and omission of the defendant's mail carrier Brooks which immediately caused and failed to prevent the injuries and damages, the act and omission occurring and concurring with another which, had they not happened, the injuries would not have been inflicted. Cawthon v. Mayo, C.A.Tenn. (1959), 45 Tenn.App. 610, 624, 325 S.W.2d 629, 635; Deming v. Merchants' Cotton-Press & Storage Co. (1891), 90 Tenn. 306, 353, 17 S.W. 89, 90, 99, 13 L.R.A. 518. In other words, the Court finds the negligence of the defendant's mail carrier was the procuring, efficient and predominant cause of the accident, close in causal connection. Cawthon v. Mayo, supra, citing (at p. 624 of 45 Tenn.App., at p. 635 of 325 S.W.2d) Grigsby & Co. v. Bratton, 128 Tenn. 597, 603, 163 S.W. 804, 806.

■ The mail carrier Brooks was negligent in omitting to re-check the relative positions of his automobile and the Ford approaching him from the rear, after he had notice of its approach. He had to assume that the Ford was approaching at or near the lawful rate of speed. Atchley v. Sims, C.A.Tenn. (1938), 23 Tenn.App. 167, 172 [12], 128 S.W.2d 975. At a speed of 60 miles per hour, for example, a speed less than the legal limit, the Ford, if 800 to 900 feet west of the mail carrier (as he testified it to be when he saw it) would have reached the mail box in about 10 to 12 seconds; yet the defendant's mail carrier looked at the approaching Ford only one time, ignored its approach and slowly pulled onto the highway directly into its path; he did not look for it or see it again until

it had overtaken him and brushed his rear bumper. He did not, in fact, even see the collision. These findings require no further amplification as to this phase of his negligence.

The defendant's mail carrier was also negligent in failing to give signals of his intention to move into traffic before turning in the direction of his intended course, T.C.A. § 59–843(9), and in moving his automobile to the left on the roadway when such movement could not be made with reasonable safety, T. C.A. § 59–842. A person driving an automobile in violation of a state law is guilty of negligence per se. Hopper v. United States, D.C.Tenn. (1953), 122 F. Supp. 181, 188 and cases there cited under [7]. There was no emergency confronting this driver which excused his failure to give the required signals. Sellers v. American Industrial Transit, C.A.Tenn. (1951), 35 Tenn.App. 46, 242 S.W.2d 335.

It should be observed that these cases are distinguishable on the facts from Harris v. Hendrixson, C.A.Tenn. (1941), 25 Tenn.App. 221, 155 S.W.2d 876, where the Court found that the failure of the defendant to give the required signals was not the proximate cause of the accident, and where the plaintiff admittedly saw the defendant's car 567 feet before he overtook it. Here the factual situation is different: the failure of the defendant's mail carrier to give the required signals was a proximate cause of the accident, and the only evidence that the plaintiff Cline might have seen the Plymouth 800 or 900 feet before he overtook it comes from the mail carrier himself. At this time the Plymouth was well off the paved portion of the highway and moving very slowly, if at all. The Court is persuaded that the mail carrier may have misjudged the distances involved. The plaintiff Cline, the witness Mahan, Jr., and the witness Clevenger all testified that there was no more than 100 feet between the Ford and the Plymouth when it became apparent that the Plymouth was definitely re-entering traffic on the highway.

It should also be emphasized that the Plymouth was situated very near a parked automobile and had, itself, been parked momentarily in the same vicinage. It is the undisputed testimony of the plaintiff Cline that he applied his brakes at once when he became aware that the Plymouth was, in fact, entering, or re-entering, the eastbound lane of traffic on the highway and that the Ford began skidding immediately; the other eye-witnesses testified that the Ford was within 50 feet of the Plymouth when the former began to skid and slide.

The facts herein are akin to those in Southern Bell T. & T. Co. v. Skaggs, C.A. Tenn. (1951), 34 Tenn.App. 549, 558–559, 241 S.W.2d 126, 130, certiorari denied, wherein the plaintiff testified " * * * that, because of the hill and weather conditions, he could not see the truck until he reached the west end of the bridge and that as soon as he saw the truck in his path, when he was approximately the length of the bridge away from it, a distance which the plaintiff estimated to be about 60 feet, but which in reality was 170 feet, he applied his brakes and made every effort to stop his car, but could not do so in time to avoid a collision because of the wet, slippery pavement. * * * " That plaintiff's recovery was sustained on appeal.

The question of the possible contributory negligence of the plaintiff Cline under Tennessee law is more troublesome for the Court. It has been assumed in Tennessee appellate court opinions for about 35 years that a driver driving on wet and slippery roadways is under the duty to know that his car cannot be stopped as readily as on dry roadways and must operate his car accordingly. This Court has no quarrel with that rule. However, some Tennessee courts go further to hold that if the driver operates a vehicle *so that it is out of control, he is guilty of negligence.* These decisions customarily cite National Cash Register Co. v. Leach, C.A.Tenn. (1926), 3 Tenn. App. 411. The body of the opinion in that case hardly seems to support the headnote relied upon. Therein, the ap-

pellate court held that, while the wet pavement alone is insufficient to impute negligence, the wet pavement which contributes to the inability of a driver to control his car, when taken in conjunction with the high rate of speed at which the driver operates a vehicle, *may* constitute negligence. Id., pp. 412–413.

The crux of the contributing negligence question is whether the plaintiff Cline did what a person of ordinary prudence ought *not* to have done under like circumstances. Stanford v. Holloway, C.A.Tenn. (1941), 25 Tenn.App. 379, 157 S.W.2d 864. What would be ordinary care in the operation of a motor vehicle on a highway might not always be ordinary care in the operation of a motor vehicle on a city street, Cullom v. Glasgow, C.A.Tenn. (1926), 3 Tenn.App. 443; Leach v. Asman (1914), 130 Tenn. 510, 514, 172 S.W. 303. Vehicles in a long, slow-moving line of traffic within a city, where the procession is likely to come to a sudden stop at any time, must be operated in such manner that a trailing vehicle will not crash into the rear of a vehicle ahead if the latter comes to a sudden stop, in obedience to traffic signals or in an emergency situation. Russell v. Furniture Renewal, Inc. (1941), 177 Tenn. 525, 531–532, 151 S.W.2d 1066.

Under the "assured clear distance" doctrine in Tennessee, a motorist is required to proceed at a speed sufficiently slow to enable him to stop within the distance in which he can see an obstruction in the highway ahead; but because of the widely known fact that motorists generally drive their automobiles at a high rate of speed along highways, and that such highways are built to accommodate vehicles traveling at such speeds, motorists have a right to assume that others using the highway will obey the law; so the rule does not apply as a matter of law where the motorist encounters a dangerous situation, which, in the exercise of reasonable care, he had no reason to expect. Halfacre v. Hart (1951), 192 Tenn. 342, 345–346, 241 S. W.2d 421.

Which vehicle had the "right-of-way" at the time and place of the collision is not determinative. " * * * The mere fact that one vehicle has the right of way over another * * * does not relieve the driver of the vehicle thus favored from the duty of exercising due care not to injure others * * * ". Duling v. Burnett, C.A.Tenn. (1938), 22 Tenn.App. 522, 534–536, 124 S.W.2d 294, 302.

One Tennessee court has aptly observed: " * * * We do not mean to be understood as saying that because he was in his proper right of way, he could not be negligent, or that he would necessarily have been on the lookout ahead, or that because he was in his right of way he was relieved of the duty to exercise ordinary care. Care is a state of mind of an individual and whether it is proper care being exercised is a question to be determined from the circumstances and movements that he makes, and whether or not he is in the right position in the first place. * * * " Cawthon v. Mayo, supra, 325 S.W.2d at p. 642, certiorari denied, citing Western Union Telegraph Co. v. Dickson, C.A.Tenn. (1941), 27 Tenn.App. 752, 173 S.W.2d 714, certiorari denied, wherein this language was adopted approvingly: "We do not, of course, mean to say that one having the right-of-way is relieved of the duty to exercise ordinary care, but the fact that the right-of-way is his and he knows it, is a factor and may be an important one in determining what is required by ordinary care with respect to the use of the senses and otherwise; for such an one may proceed upon the assumption that vehicles approaching that point will be under control so as to enable the operators to perform their duty to yield the right-of-way. Compare Tri-State Transit Co. [of Louisiana] v. Duffey [27 Tenn.App. 731], 173 S.W.2d 706." Id., 173 S.W.2d p. 719.

Under the aggregate of these holdings, the Court is unable to conclude that the defendant has carried the burden of proving that the plaintiff Cline was guilty of negligence which caused or contributed to cause the accident in question.

Lee v. Southern Railway Company, C.A. 6th, 303 F.2d 880 (June 13, 1962). As indicated, supra, courts have generally recognized that the question of contributory negligence on the part of a party injured when his car skidded is to be decided on the basis of whether the plaintiff did what a person of ordinary prudence under like circumstances ought *not* to have done. Stanford v. Holloway, supra, and cases there cited.

There still remains, however, a consideration of the question of remote contributory negligence. This may well be prefaced with the assertion that the Court is not satisfied that this accident would have been averted if the plaintiff Cline had been driving at a slower rate of speed. Neither is the Court completely satisfied, indeed, that there would have been no accident had the highway pavement been dry. On the other hand, the Court is convinced that if the defendant's mail carrier had not been negligent, there would have been no accident. It cannot be inferred that the plaintiff Cline could have foreseen or reasonably anticipated this accident.

■ The rule in Tennessee is that an injury which could not have been foreseen or reasonably anticipated as the probable result of an act of negligence is not actionable and such act is either a remote cause or no cause at all of the injury. Moody v. Gulf Refining Co. (1920), 142 Tenn. 280, 218 S.W. 817, 820, 8 A.L.R. 1243; Moyers v. Ogle, C.A.Tenn. (1940), 24 Tenn.App. 682, 148 S.W.2d 637, 639.

■ The fact that the plaintiff Cline was operating the Ford within the speed limit does not preclude his speed from constituting negligence under the circumstances. Gulf Refining Co. v. Frazier, C.A.Tenn. (1939), 15 Tenn.App. 662, 667, citing Berry on Automobiles. The quantum of care required of motorists is measured by the exigencies of the particular situation and is commensurate with the risk of injury to others, having in view the condition of traffic at the time and place and the nature and condition of the machine being operated.

Caldwell v. Hodges, C.A.Tenn. (1935), 18 Tenn.App. 355, 357, 77 S.W.2d 817, 822; Hopper v. United States, supra. "A more diligent observation is required where the conditions are such as to increase the danger of accident, as where climatic conditions have made the highway or street more hazardous to drive on than usual." Hopper v. United States, supra, 122 F.Supp. at p. 189, citing 60 C.J.S. Motor Vehicles § 284, p. 664.

Skidding is not beyond the control of the driver of a motor vehicle. It results from definite physical factors such as speed. " * * * Wet * * * roads are potent and well known dangers which may be diminished by the * * * reduction of speed. It is well known that a sudden application of the brakes on a slippery pavement will almost inevitably cause the car to skid and swerve from its course. * * * " Stanford v. Holloway, supra, 25 Tenn.App. pp. 386–387, 157 S.W.2d p. 869, citing Grizzard & Cuzzort v. O'Neill, C.A.Tenn. (1939), 15 Tenn.App. 395, 399.

■ Wherefore, the Court finds and concludes that the plaintiff Cline was not entirely free of negligence, but that his negligence was not the cause of his damages and the injuries to himself and his wife and that his negligence did not proximately concur with the negligence of the defendant's mail carrier in producing such damages and injuries, but contributed only remotely thereto. Therefore, the Court *must* take into consideration the remote contributory negligence of the plaintiff Cline and properly reduce the amount of damages from that which otherwise would be awarded to the plaintiffs. McClard v. Reid (1950), 190 Tenn. 337, 343, 229 S.W.2d 505 [8].

■ In Civil Action No. 1551, a judgment is awarded in favor of the plaintiff Cline and against the United States for $4,575.45. In Civil Action No. 1552, a judgment is awarded in favor of the plaintiff Cline and against the United States for $41,238.32 and $600.00 property damage, making a total judgment therein of $41,838.32. T.C.A. § 20–607.

On application the Court will fix the amount of attorneys' fees pursuant to 28 U.S.C. § 2678.

This opinion will serve as the required findings of fact and conclusions of law.

Proposed judgments will be submitted for the Court's approval by counsel for the plaintiffs after submission to the United States Attorney.