# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
May 2000 Session

## LARRY D. WARD, Individually and On Behalf of the Heirs at Law of RECO ANTONIO WARD, Deceased v. A.C. GILLESS, JR., ET AL.

**Appeal from the Circuit Court for Shelby County**
**Nos. 88955 T.D. and 88956 T.D.     Kay S. Robilio, Judge**

---

**No. W1999-01324-COA-R3-CV  - Decided August 21, 2000**

---

This is a dispute between Plaintiff Larry D. Ward and Defendants A.C. Gilless, Jr., The Shelby County Sheriff's Office ("Sheriff's Office"), Ted Fox, and The Shelby County Division of Public Works ("Division of Public Works") regarding the cause of an automobile accident that resulted in the death of Reco Antonio Ward ("Decedent"), Mr. Ward's son. The trial court found that the Decedent was negligent, that the Decedent's own negligence was the proximate cause of his death, and that any negligence on the part of the Defendants was exceeded by the negligence of the Decedent. For the reasons set forth below, we affirm the ruling of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S. and ALAN E. HIGHERS, J., joined.

Marcus Nahon and Bradley G. Kirk, Memphis, Tennessee, for the appellant, Larry D. Ward.

Carroll C. Johnson, Memphis, Tennessee, for the appellees, A.C. Gilless, Jr., The Shelby County Sheriff's Office, Ted Fox, and The Shelby County Division of Public Works.

## OPINION

On March 2, 1997 at between 6:00 and 6:30 p.m., the Decedent was driving south on Brunswick Road in Shelby County, Tennessee. Earlier that day, the Decedent had driven back and forth down Brunswick Road on at least four occasions. According to the Decedent's cousin Jeffrey Thomas, who was the sole passenger in the vehicle, the Decedent was initially traveling the speed limit of forty-five miles per hour but, as they approached the Loosahatchie bridge, the Decedent slowed down to between thirty-five and thirty-seven miles per hour. Approximately one or two miles before the Decedent reached the bridge, it started raining heavily. As the Decedent crossed

the bridge, he encountered water in the road immediately south of the bridge. The Decedent either struck the water or swerved in an attempt to avoid the water and lost control of his vehicle, rolling the vehicle and coming to rest in a flooded field on the side of the road. Mr. Thomas escaped from the vehicle but the Decedent was not able to escape and ultimately drowned.

Prior to the Decedent's accident at approximately 1:00 a.m. on March 2, 1997, Charles Ridings of the county road department received a call notifying him that water was collecting on Brunswick Road and consequently called Tray Summers, also an employee of the road department, who then drove to the area and posted warning signs. Mr. Ridings personally drove to Brunswick Road at approximately 1:00 p.m., noticed that it was flooding, and once again called Mr. Summers, who subsequently posted more warning signs in the area. At 2:58 p.m., a citizen called the Shelby County dispatcher and reported that conditions were becoming hazardous on Brunswick Road. Charles Brown of the county road department drove down Brunswick Road between at 3:00 and 3:30 p.m. and observed that water was beginning to approach the pavement in several places. A second citizen called the Shelby County dispatcher at 4:41 p.m. and warned of the hazardous conditions on Brunswick Road. The dispatcher sent a squad car to investigate the road conditions and, at 5:38 p.m., Deputy Sheriff William Speight radioed the dispatcher, informed her that water was gushing across the roadway, and instructed her to call someone at the road department so that he or she could send someone to check the roadway and possibly set up barricades. At 5:54 p.m., the dispatcher notified the fire department and various governmental entities that Brunswick Road was being closed. At 6:02 p.m., the dispatcher advised Mr. Ridings that Brunswick Road was being closed and requested that someone from the road department set up the proper barricades. Mr. Ridings then contacted Mr. Summers and instructed him to get the barricades from the department shed and bring them to Brunswick Road. Mr. Summers went to the storage shed but was unable to locate the key to unlock the gate. Mr. Summers consequently called Andy Ward, also an employee of the road department, for assistance. When Mr. Ward arrived at the storage shed, it was discovered that Mr. Summers did, in fact, have the correct key to the gate. By the time that Mr. Summers and Mr. Ward arrived at Brunswick Road with the barricades at approximately 7:00 p.m., the accident involving the Decedent had already occurred.

On July 15, 1997, Mr. Ward filed a complaint in his individual capacity and on behalf of the Decedent's heirs against Mr. Gilless[1] and the Sheriff's Office alleging that these parties were negligent in failing to close Brunswick Road prior to the Decedent's accident. On that same date, Mr. Ward filed a separate complaint against Mr. Fox[2] and the Division of Public Works alleging that these parties were negligent in constructing the portion of Brunswick Road on which the accident occurred and in failing to close Brunswick Road prior to the Decedent's accident. In the separate answers that they subsequently filed, the Defendants denied that they were negligent and further alleged that the Decedent was negligent in that he (1) did not keep a proper lookout, (2) did not exercise reasonable and ordinary care, and (3) moved about in a careless and reckless manner. By

---

[1]Mr. Gilless is the Sheriff of Shelby County, Tennessee.

[2]Mr. Fox is the Director of the Division of Public Works.

consent, separate orders were entered in August of 1997 dismissing all claims against Mr. Gilless and Mr. Fox. Thereafter in January of 1998, the two actions were consolidated for trial. After hearing the matter on March 3, 4, and 5, 1999, the trial court specifically found in pertinent part as follows:

5. [The Decedent] was familiar with the area on and around Brunswick Road.

6. [The Decedent] had traveled Brunswick Road on several occasions earlier on March 2, 1997.

7. [The Decedent] had traveled through an area on Brunswick Road where water was crossing the road on March 2, 1997, prior to the accident.

8. There were signs posted on Brunswick Road warning of high water on March 2, 1997, both prior to and at the time of the accident.

9. [The Decedent] was familiar with the conditions existing on Brunswick Road on March 2, 1997.

10. [The Decedent], at the time of the accident, was traveling in an unsafe manner.

11. [The Decedent], at the time of the accident, was traveling faster than he should have been given the conditions existing on Brunswick Road.

12. [The Decedent] was driving in a negligent manner at the time of his death.

13. The negligence of [the Decedent] exceeded any negligence of defendants.

Whereupon the Court having found the aforementioned facts, this Court concludes as a matter of law that the negligence of [the Decedent] was a direct and proximate cause of his death and that the negligence of [the Decedent] exceeded any negligence of defendants.

Consistent with these findings, the court entered an order on May 6, 1999 dismissing the complaints filed by Mr. Ward. This appeal by Mr. Ward followed.

The sole issue raised on appeal by Mr. Ward is whether the trial court erred in finding that the Decedent was driving in a negligent and unsafe manner at the time of the accident that resulted in the Decedent's death. Because this issue involves questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness and we may not reverse the court's findings with respect to this issue unless they are contrary to the preponderance of the evidence. *See, e.g., Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996); T.R.A.P. 13(d).

On appeal, Mr. Ward argues that there is no evidence in the record that supports the findings of the trial court with respect to the alleged negligence of the Decedent. Additionally, Mr. Ward contends that, based on the undisputed testimony of Mr. Thomas, the court should have found that the Decedent was driving in a safe and cautious manner. The Sheriff's Office and the Division of Public Works argue, however, that there is ample evidence in the record supporting that trial court's conclusion that the Decedent was driving in a negligent and unsafe manner at the time of the accident.

Under Tennessee law, the standard that must be applied in negligence cases is that of a reasonable and prudent person in the same or similar circumstances. *See Menuskin v. Williams*, 940 F. Supp. 1199, 1211 (E.D. Tenn. 1996); *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 895 (Tenn. 1996); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Dooley v. Everett*, 805 S.W.2d 380, 384 (Tenn. Ct. App. 1990); *Kelley v. Johnson*, 796 S.W.2d 155, 158 (Tenn. Ct. App. 1990). When determining whether an individual has conformed to this standard, the trier of fact must consider the evidence presented regarding the facts of the case and may also rely on the considerations of logic, common sense, public policy, and precedent. *See Kelley*, 796 S.W.2d at 158. When an individual is operating a motor vehicle, he or she is required to operate the vehicle in such a manner and at such a speed that is consistent with what a reasonable and prudent person would do under the same or similar circumstances. *See Cawthon v. Mayo*, 325 S.W.2d 629, 637 (Tenn. Ct. App. 1958); *Coleman v. Byrnes*, 242 S.W.2d 85, 89 (Tenn. Ct. App. 1950). Consistent with this general rule, a motorist must proceed at a speed sufficiently slow to enable him or her to stop in time to avoid any obstruction or condition in the roadway that he or she had a reason to expect. *See Cline v. United States*, 214 F. Supp. 66, 72 (E.D. Tenn. 1962). An acceptable speed of travel is one that is commensurate with the then existing conditions of the roadway and atmosphere. *See Hopper v. United States*, 122 F. Supp. 181, 188 (E.D. Tenn. 1953). The mere fact that a motorist is operating his or her vehicle at a speed that is within the limit proscribed by law does not preclude the conclusion that the speed is excessive under the circumstances. *See Cline*, 214 F. Supp. at 73; *Hopper*, 122 F. Supp. at 188. When determining whether an individual was operating his or her vehicle at an excessive speed under the circumstances, it is not essential that the trier of fact have before it direct evidence regarding this matter; rather, a finding with respect to the speed of a vehicle may be inferred from the facts of the case. *See Nash v. Love*, 440 S.W.2d 593, 598 (Tenn. Ct. App. 1968); *Templeton v. Quarles*, 374 S.W.2d 654, 658 (Tenn. Ct. App. 1963).

In the case at bar, it is undisputed that the Decedent's accident occurred at between 6:00 and 6:30 p.m, that it had been raining heavily, and that parts of Brunswick Road were flooded. Additionally, it is undisputed that on the same day of the accident, the Decedent had previously driven his vehicle back and forth down Brunswick Road on at least four occasions. There were also warning signs posted on Brunswick Road indicating that high water was present. Thus, the Decedent must have been aware that water had collected on some sections of Brunswick Road and that the condition of the roadway was at least somewhat dangerous. The posted speed limit in the area where the accident occurred was forty-five miles per hour. Mr. Thomas, who was the sole passenger in the Decedent's vehicle, testified that the Decedent was traveling at between thirty-five and thirty-seven miles per hour at the time of the accident. The trial court found that, under the circumstances of the

case at bar, this speed was excessive and that, consequently, the Decedent was driving in a negligent and unsafe manner. We agree. Under the circumstances with which the Decedent was presented where there was water collecting on and flooding the roadway, we think that a reasonable and prudent driver would have reduced the speed of his or her vehicle to the extent necessary to allow him or her to see upcoming flooded areas prior to reaching these areas. Additionally, we think that, after realizing that a section of the roadway was flooded, a reasonable and prudent driver would slow down to a very low speed before attempting to proceed through the area. As stated above, the Decedent was traveling at a speed of thirty-five to thirty-seven miles per hour when he encountered the water that had collected immediately south of the Loosahatchie bridge. At this speed, the Decedent did not see the flooded area of the roadway until it was too late to avoid the area or attempt to negotiate the area at a safe speed. Thus, we agree with the trial court that the Decedent was operating his vehicle at an excessive speed given the hazardous conditions present at the time of the accident and the Decedent's awareness of these conditions. We therefore conclude that the evidence does not preponderate against the court's finding that the Decedent was operating his vehicle in a negligent and unsafe manner.

Based on the foregoing, we conclude that the evidence does not preponderate against the trial court's finding that the Decedent was driving in a negligent and unsafe manner at the time of the accident that resulted in his death. The judgment of the trial court is affirmed and the costs of this appeal are assessed to Mr. Ward, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE