MELANIE DENISE NASH by next friend, MRS. ANNA BELLE BUTLER, and MRS. ANNA BELLE BUTLER, Individually, Plaintiffs in Error, v. THOMAS M. LOVE and PATRICIA A. LOVE, Defendants in Error. —440 S.W.2d 593

Western Section. November 22, 1968.

Certiorari Denied by Supreme Court May 5, 1969.

274

Hearn W. Tidwell and Keith V. Moore, Memphis, for plaintiffs in error.

Leo Bearman, Sr., and Leo Bearman, Jr., Memphis, for defendants in error.

MATHERNE, J.  Plaintiffs below have perfected their Appeal in Nature of Writ of Error from the action of the Trial Court sustaining a motion for directed verdict in favor of defendants. The parties will be referred to as they appeared below, plaintiffs-in-error as plaintiffs or by name, and defendants-in-error as defendants or by name.

This suit arose out of an automobile-pedestrian collision on May 26, 1967, on Haynes Street in the City of Memphis, Tennessee. The plaintiff, Melanie Denise Nash, is a minor who sues by her mother and next friend, Mrs. Anna Belle Butler, for damages due to personal injuries

received when struck by an automobile allegedly owned by defendant, Thomas M. Love, and being driven at the time by his wife, defendant, Patricia A. Love. Plaintiff, Anna Belle Butler, sued individually to recover medical and other expenses incurred by her due to the injuries received by her minor child, Melanie Denise Nash.

By Declaration plaintiffs alleged that the minor plaintiff was crossing Haynes Street and had almost reached the center of the street when defendants' automobile struck her and caused serious personal injuries. Plaintiffs alleged defendant driver exceeded a reasonable speed under the circumstances, did not maintain proper lookout, failed to apply brakes and swerve in order not to hit the child and failed to have her vehicle under proper control, and also the violation of certain ordinances of the City of Memphis regulating the operation of motor vehicles. Defendants, by Special Plea, denied all allegations of negligence and violation of city ordinances and alleged that the child came out into the street from in front of a car parked on the west side of the street, that defendant could not see the child prior to her appearing directly in front of her vehicle due to her vision being blocked by the parked car, that the plaintiff child was guilty of negligence in the premises which was the proximate cause of the injury, and was also guilty of violating certain ordinances of the City of Memphis regulating pedestrians.

The cause was tried before a jury in the Circuit Court of Shelby County, and at the close of plaintiff's proof the Trial Judge sustained defendants' motion for a directed verdict and dismissed the cause. Plaintiffs have perfected their Appeal in Nature of Writ of Error to this Court, and by five Assignments of Error present the following

issues: (1) The Trial Court erred in directing a verdict in favor of defendants, (2) The Trial Court erred in dismissing the jury panel because plaintiff inquired of prospective jurors as to their affiliation with a specific insurance company, (3) The Trial Court erred in not allowing plaintiffs to read certain portions of defendant driver's discovery deposition, and (4) The Trial Court erred in overruling plaintiffs' motion to reopen plaintiffs' proof after plaintiffs had rested the case and after motion for directed verdict had been made.

The facts proven in this case are few, simple and uncontradicted. Plaintiff, Melanie Nash, eight years of age, was on her way to her church to attend a Brownie Girl Scout meeting. This minor lived with her mother in an apartment complex at the corner of Kimball Street and Haynes Street. She was instructed by her mother not to cross Haynes Street but to walk from her apartment eastwardly to the sidewalk paralleling Haynes Street, then walk on that sidewalk in a northerly direction to Barron Street, then turn to her left on Barron walking westwardly to the church. This child had walked this route to the church on previous occasions. As Melanie was walking toward Haynes Street from her apartment, she saw a white station wagon stopped on Haynes Street, which she thought was a Mrs. Walker's car, and which vehicle had Brownies in it. She thereupon started running toward this car which was stopped on the opposite side of Haynes Street from the position of plaintiff, but by the time plaintiff reached the street this car started up and moved northwardly toward Barron Street. The minor testified as follows:

"Q. And did you run toward Haynes Street?

A. Yes.

Q. And tell us exactly what happened Melanie, as you reached the sidewalk at Haynes Street?

A. As I got to the edge of the sidewalk, I slowed down and then as I stepped down to the curb, I was walking and I stopped and looked to the right as I was turning, I got hit and I didn't get a chance to look to the left.

Q. Now, why did you stop to look to the right and then start to look to the left?

A. So I wouldn't get hit.

Q. So what?

A. So that I wouldn't get hit.

Q. Now, were you walking, running or standing still at the time you were hit?

A. I was standing still.''

This plaintiff testified there were cars parked along the side of Haynes Street. On cross examination she testified:

''Q. You say you were running toward the street and then stepped into the street?

A. Yes, but I slowed down.

Q. You slowed, then you weren't running at your fastest speed?

A. No, sir, I wasn't running at my fastest across the lawn here.

Q. Now, when you finally came to a stop, Melanie. you were in the street?

A. Yes, sir, so that I could see ahead of the cars.

Q. But you didn't stop at the sidewalk, did you?

A. No, sir, I was walking.

Q. And you didn't look at the sidewalk before you walked into the street, did you?

A. No, sir, but I was between the cars so that I got beyond the cars so that I could see.

Q. You came out into the street from between some cars that were parked on that side of the street, is that right?

A. Yes, sir.

Q. And you stepped out, either walking or whatever, you moved out in front of the cars so you could see, is that right?

A. Yes.

Q. And then you looked to your right, is that right?

A. Yes, sir.

Q. And—

A. (Interposing) As I was turning to look to the left, I was hit.

Q. You were hit and that's all you know?

A. Yes, sir.''

Plaintiff, Mrs. Anna Belle Butler, testified that she instructed her child, Melanie, to walk to the church as outlined herein. She received word of the accident and was at the scene within five minutes after it happened, and Melanie was lying in the street when she arrived. She did not know how far out in the street the child was lying. She stated there were cars parked along the west

side of Haynes Street, she did not know how many. The child was taken to Methodist Hospital.

Warren A. Dale, policeman, testified that he arrived at the scene at 7:50 p.m. The child had already been taken to the hospital. He determined the point of impact to be six feet and seven inches east of the west curb of Haynes Street and five feet nine inches south of a car parked within twelve inches of the west curb of Haynes Street. He did not know by measurement where the automobile of defendant was located. Haynes Street is 29 feet wide at the scene. His report showed "no damage" to defendants' automobile. He testified that he determined that the point of impact on defendants' vehicle was on the right side of the right front fender. He did not note any dents or scratches on the defendants' vehicle but ascertained the point of impact by other evidence. The accident happened several hundred feet from any intersection and at about the middle of the block.

Portions of the discovery deposition of defendant driver was read which reveal that she was familiar with Haynes Street at the scene, that the accident occurred at about 7:30 p.m., and it was daylight. On this occasion she was traveling south on Haynes Street, and there were cars parked to her right or on the west side of Haynes Street. The first time she saw the child was when the child was about one car length and in front of a car parked at the west curb on Haynes Street. She did not see the child running across the east lawn of the apartment complex.

The child, Melanie Nash, sustained a displaced fracture of her right leg, a broken left wrist, a through-and-through laceration of her lower lip, and a laceration

through her chin, along with other bruises and abrasions. Medical expenses of about $1,000.00 were proved.

■ Assignments of Error II and II alleged that the Trial Judge erred in directing a verdict in favor of the defendants. The rule is well settled that in considering defendants' motion for a directed verdict the Court must look to all the evidence, take as true the evidence for the plaintiff, discard all countervailing evidence, take the strongest legitimate view of the evidence for the plaintiff, allow all reasonable inferences therefrom; and if there is any dispute as to any material determinative evidence or any doubt as to the conclusions to be drawn from the whole evidence, the motion must be denied. Smith v. Sloan (1949) 189 Tenn. 368, 225 S.W.2d 539, 227 S.W. 2d 2.

■ Applying the foregoing rule, the determinative question is whether there is any material evidence, direct or circumstantial, from which it may be inferred that defendant driver was guilty of negligence which contributed as a proximate cause to plaintiff's injuries. The happening of an accident which results in injury to a person does not of itself constitute actionable negligence. Williams v. Jordan (1961) 208 Tenn. 456, 346 S.W.2d 583.

■ We must here note that there is no proof in the record of the speed of defendants' vehicle at the time of the accident. Direct testimony is not essential to warrant a finding of excessive speed, but same may be inferred from facts which would indicate excessive speed under the circumstances. Templeton v. Quarles (1963) 52 Tenn.App. 419, 374 S.W.2d 654. But here there is no proof from which it could be inferred that the defendant driver was exceeding what would have been a safe speed —no skid marks were proved, the distance the vehicle

overshot the point of impact is not shown, the distance the child was knocked by the impact is unknown. The defendant driver apparently was not asked her speed on the discovery deposition; the child did not see the car which hit her and could not have known about its speed. Also it is to be noted that defendants' car was not dented or scratched by the impact of this collison.

■ Plaintiffs apparently rest their charge of negligence on the fact that the defendant driver could see the east lawn of the apartment complex as she proceeded south on Haynes Street and that she saw, or should have seen, the minor child running across this lawn toward Haynes Street. The material evidence on this point is that the east lawn of the apartment complex can be observed when looking south along Haynes Street; that there were automobiles parked at the west curb of Haynes Street at the time which would have at least partially obscured defendant's view of the lawn; the defendant driver testified (discovery deposition) that she did not see the child running on the lawn and stated there were cars parked on the west side of the street which could have prevented her from seeing the child. Can we infer improper lookout by the defendant driver as the proximate cause of the accident?

In the case of Coleman v. Byrnes (1950) 34 Tenn.App. 680, 242 S.W.2d 85, an 11½ year old boy on a bicycle swerved to his left out from behind a large garbage truck stopped on the street and collided with defendant's truck traveling in the opposite direction. The plaintiff there contended defendant was not maintaining proper lookout or he would have observed the boy riding the bicycle prior to going out of view behind the stopped garbage truck. Judge Anderson refuted this contention

in sustaining a directed verdict for the defendant and stated:

"Here again the requirement was that of ordinary care, that is, the driver was required to keep only such a lookout as the ordinarily prudent person would have kept under the same or similar circumstances. In traveling upon a city street, such a person does not keep his attention centered on one side of the street or on one particular area."

In the instant case the defendant driver was proceeding past parked cars to her right, and according to the plaintiff child's testimony there was a car meeting her (Mrs. Walker's white station wagon). This defendant had to observe that car, maintain a lookout for a possible starting up of a parked car or a possible opening of the doors thereof by a person getting out on the street side. The fact that she did not see the child, Melanie, running across the lawn to her right behind parked automobiles is no reason to infer that a proper lookout was not kept.

■ Also the plaintiffs are confronted with the issue with respect to the proximate cause of the injuries sustained. What is meant by proximate cause is not necessarily that which is next or last in time or place, but that which is a procuring, efficient and predominate cause. Closeness in causal relation, rather, is the meaning. Grigsby & Co. v. Bratton (1913) 128 Tenn. 597, 163 S.W. 804.

■ The intervening act of a minor may be the responsible cause of his own injury although he could not be held guilty of contributory negligence. Nashville, C. & St. L. Ry. Co. v. Harrell (1937) 21 Tenn.App. 353, 110 S.W.2d 1032; Stafford v. Consolidated Bus Lines, Inc.

(1942) 179 Tenn. 185, 164 S.W.2d. 15; Coleman v. Byrnes, supra.

Under the proof it is uncontradicted that the child stepped out from an obstruction (parked automobile) directly in front of defendant's vehicle; that defendant driver did not see the child until she appeared from out in front of a parked vehicle, and at a time when defendant was only one car length away. The child never looked in the direction of defendant. The facts establish that this child was hit almost instantly upon stepping out from between the parked cars in that the child only had time to come to a standstill and look right before being hit. It is established by the proof that the child could not see right or left in that she came out into the street between two parked automobiles and was attempting to look both ways, ''So I wouldn't get hit.''

It is uncontroverted, and the facts leave only one possible conclusion which reasonable minds could reach namely, no improper or negligent conduct can be inferred on the part of the defendant, and the proximate cause of plaintiff's injuries was the fact that she stepped out from in front of the parked automobile into the path of defendant's automobile at a time when it was too late for defendant to avoid hitting her.

Although the question of proximate cause is ordinarily for the jury, where the facts are fairly uncontroverted the question of proximate or intervening cause is for the court. Chattanooga, etc., Co. v. Hodges (1902) 109 Tenn. 331, 70 S.W. 616, 60 L.R.A. 459; Moody v. Gulf Refining Co. (1919) 142 Tenn. 280, 218 S.W. 817, 8 A.L.R. 1243.

It results the Trial Court did not err in sustaining the motion for directed verdict against the plaintiffs, and Assignments of Error II and III are overruled.

Assignment of Error I complains of the action of the Trial Judge in dismissing the jury panel because of certain inquiries made of prospective jurors by plaintiffs' attorney concerning the jurors possible affiliation with a specific insurance company. Whatever questions may have arisen here, and which would have been before us on review had a jury verdict been rendered, became moot when the Trial Judge took the case from the jury and directed a verdict for the defendants.

By Assignment of Error IV plaintiffs allege as error the action of the Trial Judge in sustaining the defendants' objection to the reading by plaintiffs from the discovery deposition of defendant driver certain testimony which would have proven that defendant was familiar with the neighborhood and knew that a good many children lived on Haynes Street. Plaintiffs contend that the knowledge by defendant that a good many children lived on Haynes Street placed defendant on notice and under a degree of care which would anticipate their childish conduct, and thus the testimony offered would be competent. We do not agree with plaintiffs' contention. If the proof offered was such as to show in fact that children were at the time in the vicinity of the street in such a manner as to put an ordinarily prudent person on such notice as to anticipate childish conduct on their part, then testimony to that effect would be competent. However, under this record, without the presence of other children at the scene, there is no such notice imputable to the defendant.

Plaintiffs further insist that this testimony of defendant driver on her discovery deposition is admissible because it was not objected to by defendants' counsel when taken. Under Tennessee Code Annotated, Section 24-1211, objections to the competency of a witness or to the competency, relevancy or materiality of the testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if presented at that time. Since the question calls for a simple "yes" or "no" answer and is not objected to as being leading, it is hard to see how the objection of "no probative value" could have been obivated if presented at the time of the taking. The question and answer are simply irrelevant to the issues involved and were properly excluded by the Trial Court. Assignment of Error IV is overruled.

Assignment of Error V complained of the action of the Trial Judge in not allowing plaintiffs to reopen their proof after they had rested, and the motion for directed verdict had been made. After counsel for both sides had made some argument on the motion for directed verdict, the attorney for plaintiffs stated to the Court that he was present at the scene of the accident within five minutes after the accident and had knowledge of material facts which would substantiate plaintiffs' contention in the cause. This attorney asked the Court for permission to reopen plaintiffs' proof and to testify concerning these facts. The Court would not permit plaintiffs' attorney to reopen plaintiffs' case and testify as to his knowledge and sustained the motion for a directed verdict. At this stage of the case it was a matter within the sound discretion of the Trial Judge as to

whether he would allow plaintiffs to reopen the proof. Boone v. Citizens' Bank & Trust Co. (1926) 154 Tenn. 241, 290 S.W. 39, 50 A.L.R. 1369. The facts about which plaintiffs' attorney purported to testify were not at that time presented to the Trial Judge. We cannot say that the Trial Judge abused his discretion by not allowing the plaintiffs to reopen the case.

In the Motion for New Trial filed by the plaintiffs on February 23, 1968, Ground XIII thereof alleged error in that the Trial Court refused to allow plaintiffs to reopen the case for the testimony of plaintiffs' attorney. This ground of the Motion for New Trial does not state the evidence or testimony which plaintiffs' attorney would have given. The Motion for New Trial was overruled on March 1, 1968. On March 20, 1968, plaintiffs filed an affidavit of their attorney setting out the facts of which he would have testified had he been permitted to do so on a reopening of plaintiffs' proof. Defendants moved to strike this affidavit from the record, which motion was sustained by the Trial Court. This affidavit is included in the Technical Record, but it is not a part of the Bill of Exceptions before this Court and is not in any manner authenticated by the Trial Judge.

When extrinsic matters which can only be made a part of the record by a Bill of Exceptions appear in the transcript without proper authentication, they cannot be considered by an appellate court but will be striken out when called to its attention. Frierson v. Smithson (1937) 21 Tenn.App. 591, 113 S.W.2d 778. We cannot consider this affidavit, and Assignment of Error V is overruled.

It results that the Trial Court is affirmed. Appellate cost is adjudged against the plaintiffs-in-error.

Carney and Bejach, JJ., concur.