FRANKLIN MORRIS, b/n/f and father, HOWARD MORRIS, Appellee, v. ROY M. SUMMERS, Appellant.

HOWARD MORRIS, Appellee, v. ROY M. SUMMERS, Appellant.—474 S.W.2d 662.

Middle Section. June 25, 1971.

Certiorari Denied by Supreme Court October 4, 1971.

470

Cunningham, Crutchfield, McAllester & Vineyard, Chattanooga, for appellant.

Swafford, Davis & Peters, Winchester, for appellees.

SHRIVER, P.J. (M.S.). Franklin Morris, a minor 12 years of age, sued Roy M. Summers for $40,000.00 damages as the result of an accident when the automobile of defendant Summers struck and severely injured the minor plaintiff who was riding his bicycle on the highway near Sherwood in Franklin County, Tennessee.

Howard Morris, father of the minor plaintiff, sued defendant Summers for $15,000.00 for medical expenses and loss of services of his son.

On the day of trial the Declarations were amended to sue for $100,000.00 damages on behalf of the minor and $30,000.00 on behalf of the father.

The cases were tried before Circuit Judge Sam Polk Raulston and a jury, whereupon, after a comparatively brief consideration of the issues, the jury returned verdicts in each case for the full amount sued for, to-wit $100,000.00 in the minor's case and $30,000.00 in the father's case. The verdicts were made the judgment of the Court and, after motions for a new trial were overruled, the two consolidated cases were appealed to this Court and assignments filed.

## ASSIGNMENTS OF ERROR

There are four assignments of error, as follows:

"1. The Court erred in overruling defendant's motion for a directed verdict made at the close of the plaintiffs' proof and renewed at the close of all of the proof, and in failing to set the verdicts aside on Grounds I and II of defendant's Motion for a New Trial, coupled with a dismissal of plaintiffs' actions, because the verdicts are based on evidence that is contrary to the law.

2. The Court erred in overruling Ground V of the defendant's Motion for a New Trial, being that the Court had erroneously failed to charge the jury on State statutes which had been specifically pleaded by defendant in each case.

3. The Court erred in overruling Ground VI of defendant's Motion for a New Trial, which attacked as erroneous the Court's instruction to the jury on the doctrine of last clear chance.

4. The Court erred in overruling Grounds III and IV of defendant's Motion for a New Trial, being that

the verdicts were excessive; and were so excessive as to demonstrate that same were based on sympathy, passion, prejudice and caprice."

## THE FACTS

The Declaration of the minor plaintiff avers, and the record shows that on September 7, 1969, at about 1:15 P.M., Franklin Morris was riding a bicycle on State Highway 56, traveling southwardly from Sherwood, Tennessee toward Stevenson, Alabama; that defendant, Roy M. Summers, was driving a 1968 Chevrolet automobile in a northerly direction on said highway; that, as the said vehicles reached a point approximately one and one-half miles south of Sherwood, they collided, resulting in serious injuries to the minor plaintiff.

State Highway 56 is a two-lane thoroughfare with a black-top surface and a white center line, and with a yellow line indicating that southbound vehicles should not cross over said line as they approach the curve in the road at this point. The aforementioned curve extends westwardly, or to the right as one travels southwardly.

At the time in question plaintiff was riding his bicycle in the lane to his left, that is, the lane designated for vehicles traveling north. Bushes and vegetation had grown up along the westerly margin of the road so as to partially obstruct the view of motorists entering the curve. Defendant Summers, proceeding northwardly, entered said curve traveling at what he said was a speed of 45 to 50 miles per hour and, as to this estimate of speed, he was corroborated by the only other eyewitness to the scene other than plaintiff and defendant, Mrs. Maxine Woods, who was traveling southwardly on the

road approaching this curve at about the same time the plaintiff was approaching on his bicycle. Defendant Summers, upon rounding the curve, saw the plaintiff on his bicycle in Summers' lane of travel and he testified, without contradiction, that upon seeing plaintiff about sixty or seventy-five feet away, he instantly steered his car somewhat to the left and partially into the southbound lane, whereupon, he then discovered the automobile of Mrs. Woods approaching in that lane going southwardly and just about even with or opposite the plaintiff and his bicycle. Faced with this emergency, defendant applied his brakes, cut back to his right to avoid a head-on collision with the oncoming automobile of Mrs. Woods, and tried to steer his automobile between that of Mrs. Woods and the plaintiff on his bicycle but there was insufficient room so that the right side of defendant's car collided with the bicycle, throwing plaintiff off the road and severely injuring him.

Defendant's car proceeded off the right side of the road into the ditch.

There is a dispute as to the position of the plaintiff on the road at the time of the impact. Plaintiff does not deny that he was in the wrong lane of travel, but he testified that when he saw the Summers' automobile approaching him, it was about sixty feet away and, on his discovery deposition which was read into the record at the trial, he stated that he pulled off the hard surface within one foot of the shoulder when he was struck by the automobile of defendant. At the trial, however, he insisted that what he had said in the discovery deposition was a mistake because he had, in fact pulled off the hard surface onto the gravelled shoulder at the time of the im-

pact, the shoulder at this point being about three or four feet wide.

Defendant Summers testified that plaintiff was about in the center of the northbound lane when he was struck.

Mrs. Woods was unable to state what the position of plaintiff was at the time of the impact since she had just passed him, but she stated, and it is not disputed, that she had pulled to her right as far as she could, next to a small ditch along her right side of the road. And, in view of the measurements of the road and the undisputed statement of defendant that he pulled his car as far over to his left as he could without striking Mrs. Woods' car, it would appear that plaintiff probably was on the hard surface of the road when the collision occurred.

In this connection, the testimony of Mrs. Woods is significant. She said that she was in the process of passing the plaintiff on his bicycle and they were relatively side-by-side, and that plaintiff was in the middle of the northbound lane; that she was traveling about 25 to 35 miles per hour, and that when she first saw Mr. Summers' car, "he was coming around the curve . . . about a hundred feet away."

A significant statement of Mrs. Woods' was made in answer to the question as to which lane of the road defendant was in at that time. Her answer was:

"When I first saw him he was beginning to get over in my lane, but he wasn't over there completely."

She then testified:

476

"Q. And you said he was beginning to get over, what do you mean by that?

A. Well, he was just starting over into my lane . . . just part of his car was right . . . part of his car was over.

Q. Well, did he cut back or did he continue on toward you?

A. No, he cut back away from me, because if it had kept coming toward me, we would have had a wreck.

Q. All right, and what did you do?

A. I pulled over as far as I could to the right."

At another point, Mrs. Woods, on being questioned as to the speed of defendant at the time, answered:

"Well, he was going faster than I was, but he . . . I would think he was probably going under fifty miles an hour."

As to the plaintiff's injuries, he had a number of contusions and abrasions about his body, but the most severe injury was to his left leg which, because of the fact that gangrene developed in the tissues, the entire leg was eventually amputated at the hip.

He was hospitalized for a long period of time and the father incurred large hospital and doctors' bills and other medical expenses on his behalf, which expenses totaled $17,913.04.

The Highway Patrolman, Ray Clepper, went to the scene of the accident along with another State Trooper, arriving after the plaintiff had been carried to Sewanee to a hospital. Defendant's car was still in the ditch off the right-hand side of the road when the Patrolmen arrived. He testified that he stepped off the skid marks which he assumed were made by the defendant's car, and he stated that the skid marks started in the left lane for northbound traffic and that they extended sixty-two steps on the highway, and that from the point where the car left the highway to the front end of said car was another thirty-three steps. He testified that his steps were approximately three feet each.

## OUR CONCLUSION

■ The first assignment is based on the assumption and supported by the argument that the defendant was guilty of no negligence that proximately caused or contributed to the accident.

In view of the testimony of the plaintiff and that of the Highway Patrolman regarding the skid marks on the road and the length of them, together with all of the other circumstances shown by the record, we think it cannot be successfully argued that all reasonable minds must agree that defendant was free of negligence.

Assignment No. 1 is overruled.

■ ■ The second assignment charges error in that the Trial Judge failed to charge the jury on State statutes which had been specifically pleaded by the defendant in each case.

It does not appear that the oversight or failure of the Trial Judge to specifically charge the jury with respect to the State statute relied on by the defendant in his Special Pleas was called to the Court's attention at the conclusion of the charge by special request or otherwise.

As was said by this Court in the recent case of Provence v. Williams, (1970) 62 Tenn.App. 371, 462 S.W.2d 885:

"... when a party is of the opinion the instructions given by the court do not cover all phases of the case, he should call the attention of the trial judge to that fact and tender other and fuller instructions; otherwise, he cannot predicate error upon omissions in or meagerness of the charge as given."

Also see Thomas v. Harper, 53 Tenn. App. 549, 385 S.W.2d 130 and Womac v. Casteel, 200 Tenn. 588, 292 S.W.2d 782 (788).

Assignment No. 2 is overruled.

██ ██ Assignment No. 3 charges error because the Trial Judge included in his instructions to the jury a statement on the doctrine of the last clear chance.

This assignment does not conform to our rules inasmuch as it does not point out or quote the specific part of the charge complained of. And, although it might be properly argued that there was error on the part of the Court in instructing the jury on the doctrine of last clear chance since it was not included in the pleadings nor relied on in the trial, nevertheless, an examination of the charge leads us to the conclusion that, if this was error, it was harmless error.

Assignment No. 3 is overruled.

Assignment No. 4 complains of the excessiveness of the verdict and it is argued that the short duration of the jury's deliberation and the fact that they brought in verdicts in each case for the full amount sued for, together with a comparison of these verdicts with other similar cases, would clearly indicate that the jury was moved by passion, prejudice or caprice.

We are confronted with a very serious question in this lawsuit in view of the facts and circumstances surrounding the accident, which facts include:

(1) The acknowledgment or admission on the part of the father that he had given his son, who at the time was about eleven and one-half years old, permission to ride his bicycle on the highway and had warned or instructed him that he should ride on the right-hand side of the road and observe traffic regulations which he said were known to the boy.

(2) The minor plaintiff was thoroughly familiar with the road on which he was traveling since he lived only a few hundred yards away and had been on it many times. He knew that the curve he was approaching was a blind one and that he was traveling on the wrong side of the road in violation of traffic regulations. He freely admitted this in his testimony.

(3) The minor plaintiff also testified that he knew the significance and meaning of the yellow line on the highway as he approached the curve and that it meant that he should ride his bicycle in the right-hand lane and not across the yellow line, as he did.

(4) One cannot read the testimony of this boy without being convinced that he was alert and intelligent and fully aware of the rules of the road that he was violating at the time of the accident.

Having concluded, as was indicated by our overruling of Assignment No. 1. that there was evidence in the record from which the jury could have concluded, as it evidently did, that defendant was guilty of proximate negligence that contributed to or caused plaintiff's injuries, we then come to the serious question as to whether or not, under the admissions of the plaintiff and the other facts in the record, he was guilty of proximate contributory negligence as a matter of law, or whether his actions in the premises constituted an independent intervening cause which could have or should have prevented a recovery against defendant.

In Coleman v. Byrnes, 34 Tenn.App. 680, 242 S.W.2d 85, the Court deals with a case in which young Mark Coleman, age eleven and one-half years, suffered severe injuries when his bicycle collided with a pickup truck of the defendant. There was a jury verdict for $9,000.00 on behalf of the minor plaintiff and $3,500.00 on behalf of his father for expenses, etc., which were set aside and verdicts in favor of the defendants directed by the Trial Court.

In said cause the Appellate Court took occasion to define proximate cause as being that which is a procuring, efficient and predominant cause. The Court held that the intervening act of a minor might be the responsible cause of his own injury even though he could not be held guilty of contributory negligence.

Among other things, the Court stated:

"The Supreme Court has said: 'What is meant by "proximate cause" is not necessarily that which is next or last in time or place, but that which is a procuring, efficient, and predominant cause. Closeness in causal relation, rather is the meaning'. Citing authorities. Grigsby & Co. v. Bratton, 128 Tenn. 597, 603, 163 S.W. 804, 806.

In applying this principle, it is important to bear in mind that the intervening act of a minor may be the responsible cause of his own injury although he could not be held guilty of contributory negligence. Nashville, C. & St. L. Ry. v. Harrel, 21 Tenn.App. 353, 363, 110 S.W. 2d 1032; Stafford v. Consolidated Bus Line, Inc., 179 Tenn. 185, 164 S.W.2d 15; 38 Am.Jur. 732, Sec. 74.

Thus it is said that the question of whether, in view of his youth, the conduct of a boy of twelve constituted contributory negligence is not a relevant factor where the dominant point is whether his conduct amounted to an intervening cause which negatived the character of negligence of the defendant as the proximate cause of the injury. Miss. City Lines v. Bulloch, 194 Miss. 630, 13 So.2d 34, 145, A.L.R. 1199.''

The Court, in affirming the judgment of the Trial Court, stated that it was unable to escape the conclusion that the proximate cause of the minor plaintiff's injury was his act in appearing suddenly and without warning from the rear of a garbage truck headed toward the path of the approaching vehicle.

In Hadley v. Morris, 35 Tenn.App. 534, 249 S.W.2d 295, in dealing with a case in which the father sued for damages because of the death of his son who was then seven years old and who was struck and killed by an automobile, the Court held, among other things, that where a child is from seven to fourteen years old, there is a prima facie presumption that he is not capable of negligence, but if there is any material evidence that he is capable, it becomes a jury question; whereas, if he is over fourteen years of age, he is presumed to be capable of negligence as an adult.

In discussing this question, the Court, among other things, said:

"In either situation the prima facie presumption may by nullified by evidence relating to his mental development, experience and other circumstances, or the lack of these elements as the case may be. Another element or factor emphasized in Wells v. McNutt, supra [136 Tenn. 274, 189 S.W. 365], is the child's familiarity, or lack of same, with the scene of his injury by reason of living nearby, or for any other reason, we may add.

\* \* \* \* \* \*

'Where the acts of misconduct or negligence on the part of plaintiff and defendant are not successive, but simultaneous, in such case, or the act of the plaintiff may not be conceived of as terminated as a causal factor, there should be no recovery'."

In Nash v. Love, 59 Tenn.App. 273, 440 S.W.2d 593, the Court points out that the proximate cause is not

necessarily that which is next or last in time and place, but is that which is a procuring, efficient and predominant cause, and further states:

"Although question of proximate cause is ordinarily for the jury, where facts are fairly uncontroverted, the question of proximate or intervening cause is for the trial court."

In line with this quotation from Nash v. Love, we are persuaded to believe that the minor plaintiff in the case at bar was guilty of negligence which either proximately or remotely contributed to his injuries.

We are further constrained to believe that the ends of justice would be best served by holding that his admitted act of riding on the wrong side of the road was at least a remote act of negligence which contributed to the accident and that this case should either be remanded for a new trial with instructions to the jury on the question of remote contributory negligence, or the judgment rendered herein should be reduced in amount.

Preferring the latter course, we affirm the judgment with a suggested remittitur of $50,000.00 as to the judgment for the minor plaintiff, and a remittitur of $5,000.00 as to the judgment of the father, thus reducing the two judgments to $50,000.00 and $25,000.00, respectively, which suggested remittiturs, if not accepted, will result in a remand for a new trial.

Affirmed with suggested remittiturs.

Puryear and Todd JJ., concur.